**2022 WI App 16**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2020AP1394

Complete Title of Case:

**STATE OF WISCONSIN EX REL. VICTOR ORTIZ, JR.,**

        **PETITIONER-RESPONDENT,**

    **V.**

    **KEVIN A. CARR,**

    **RESPONDENT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | March 17, 2022 |
| Submitted on Briefs: | April 8, 2021 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Fitzpatrick, and Graham, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:      On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven C. Kilpatrick*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

Respondent
ATTORNEYS:      On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jason D. Luczak* and *Jorge R. Fragoso* of *Gimbel, Reilly, Guerin & Brown, L.L.P*.

COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.      2020AP1394**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CV2079

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN EX REL. VICTOR ORTIZ, JR.,

    PETITIONER-RESPONDENT,

  V.

KEVIN A. CARR,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: PETER ANDERSON, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

¶1      FITZPATRICK, J.  The judgment of conviction (the "JOC") for a criminal case in which Victor Ortiz was sentenced to prison states in pertinent part:

"Court ordered restitution to be paid from 25% of prison wages."[1] The Secretary of the Wisconsin Department of Corrections (the "Department") dismissed Ortiz's inmate complaint, which argued that the Department violated the restitution order in the JOC when the Department deducted for payment of restitution 50% of Ortiz's prison wages and 50% of gifted funds deposited in Ortiz's prison account. Ortiz petitioned the Dane County Circuit Court for a writ of certiorari regarding the Department's decision. The circuit court reversed the Department's decision and concluded that the Department acted contrary to law when it deducted more than 25% of Ortiz's prison wages to pay his restitution obligation. The circuit court did not explicitly rule on the Department's deduction of Ortiz's gifted funds.

¶2     On appeal, the Department argues that its deductions for payment of restitution of 50% of Ortiz's prison wages and 50% of the gifted funds deposited in his prison account were not contrary to the law. The Department's argument is based on two general propositions: (1) the terms of the JOC are not contradicted by the actions of the Department because the JOC must be interpreted as requiring the Department to deduct, at a minimum, 25% of Ortiz's prison wages and, as a result, the order does not limit the Department's authority to deduct more than 25% of his wages for restitution, and the JOC does not limit the Department's authority to deduct 50% of the gifted funds deposited in Ortiz's prison account; or (2) in the alternative, the deduction of 25% of prison wages ordered in the JOC does not control because the Department has the exclusive authority to determine the percentage or amount that is deducted for the payment of restitution from Ortiz's wages and gifted funds, and the sentencing court does not have the authority to

---

[1] As will be discussed, the operative judgment of conviction is an amended judgment of conviction. For convenience, we generally refer to the amended judgment of conviction as the "JOC."

determine the percentage or amount that is to be deducted for the payment of restitution from Ortiz's wages and from gifted funds.

¶3      We conclude that the JOC requires the Department to deduct not more, and not less, than 25% from Ortiz's prison wages for the payment of restitution.  We also conclude that, in these circumstances, the sentencing court has the authority to determine the percentage or amount that is to be deducted from Ortiz's prison wages to satisfy his restitution obligation, and that the Department is required to adhere to the sentencing court's order regarding deductions from Ortiz's prison wages for payment of restitution.[2]  It then follows that the Department does not have exclusive authority in that regard.  Accordingly, we affirm the circuit court's order requiring the Department to deduct only the 25% from Ortiz's prison wages to pay his restitution obligation that was ordered by the sentencing court.  However, in light of the fact that the sentencing court did not address either the use of, or limitations on the use of, funds gifted to Ortiz for payment of restitution, we reverse the circuit court's order to the extent that it prohibits the Department from deducting money from Ortiz's gifted funds for the payment of restitution.[3]

## BACKGROUND

¶4      There is no dispute as to the following material facts.

_____

[2]  We have up to this point referred to the "percentage or amount" deducted from Ortiz's prison wages.  Because the sentencing court set a percentage order in this case, and for convenience, we will generally refer to a "percentage" deducted from Ortiz's prison wages.  Nonetheless, our decision applies with equal force to a sentencing court's order that a specific amount be deducted from prison wages for the payment of restitution.

[3]  This court appointed Attorney Jason D. Luczak of the firm Gimbel, Reilly, Guerin & Brown LLP, to represent Ortiz in this appeal through the State Bar of Wisconsin's Appellate Practice Section pro bono program.  We appreciate and commend Attorney Luczak's volunteer work and the work of Attorney Jorge R. Fragoso of the same firm.

¶5      In 2010, the Milwaukee County Circuit Court (the "sentencing court") convicted Ortiz of first-degree reckless injury and armed robbery with use of force and sentenced him to confinement in state prison and extended supervision. The sentencing court also ordered Ortiz to pay $43,777 in restitution. Ortiz's original judgment of conviction did not specify a percentage of money to be deducted from Ortiz's prison wages to satisfy his restitution obligation. Nonetheless, the parties do not dispute that the sentencing court ordered at the sentencing hearing that Ortiz's restitution is to be paid from 25% of Ortiz's prison wages.

¶6      In April 2016, the Department circulated a memo to all inmates stating that, at a future date, a new Department policy would go into effect and implementation of the policy would increase the rate of deduction of inmate funds for restitution, statutory surcharges, and court costs to a maximum of 50%.[4] According to the Department, the policy reflects statutory amendments made by 2015 Wis. Act 355 ("Act 355"), which became effective on July 1, 2016. We discuss shortly the Department's concession that the provisions of Act 355 are not applicable in this situation.

¶7      In December 2016, at Ortiz's request, the sentencing court issued an amended JOC, in which the court states in pertinent part: "Court ordered restitution to be paid from 25% of prison wages."

¶8      Several months after entry of the JOC, the Department began deducting 50% of Ortiz's prison wages, and 50% of the gifted funds deposited in

---

[4] Specifically, the new policy is Division of Adult Institutions Policy No. 309.45.02.

4

what we refer to as Ortiz's "prison account,"[5] for the payment of restitution.[6] Ortiz filed an inmate complaint with the institution complaint examiner arguing that the Department's deduction of 50% from both his prison wages and his gifted funds exceeded the order in the JOC that 25% of Ortiz's prison wages be deducted for restitution. Ortiz also argued that the Act 355 amendments did not apply to him because he was convicted and sentenced before those amendments were enacted.

¶9      The institution complaint examiner recommended that Ortiz's complaint be dismissed because, according to the examiner, the Department had the authority to enforce the 50% deduction rates for each category of funds pursuant to its statutory authority both before and after the effective date of Act 355. The prison warden accepted the complaint examiner's recommendation and dismissed Ortiz's complaint. Ortiz appealed that decision to the Department Secretary who also accepted the examiner's recommendation and dismissed the appeal.[7]

---

[5] The Department is required to "establish a separate account for each person in its custody or under its supervision ordered to make restitution for the collection and disbursement of funds." WIS. STAT. § 973.20(11)(b) (2019-20). Where the pertinent language of the 2019-20 version of the statutes is unchanged from the 2008-09 version in effect at the time of Ortiz's sentencing, our references to the Wisconsin Statutes are to the 2019-20 version.

[6] The record does not make clear the intervals between deductions by the Department from Ortiz's prison wages, and neither party bases an argument on any particular mode or timing of deductions from Ortiz's prison wages. Regardless, the parties do not dispute that the Department makes deductions from Ortiz's wages for the payment of restitution on a periodic basis. Additionally, it is unclear whether the Department is deducting money from Ortiz's prison wages and gifted funds before or after those funds are deposited in Ortiz's prison account. Nonetheless, the parties agree that the Department is deducting 50% from Ortiz's prison wages and gifted funds.

[7] Cathy Jess was the Department Secretary at the time that Ortiz's complaint was dismissed. Kevin Carr is now the Department Secretary. Because Ortiz's certiorari action named Jess in her official capacity, we refer in the caption to Carr as the Department Secretary in this action. *See* WIS. STAT. § 803.10(4)(a) ("When a public officer … is a party to an action in an

¶10 Proceeding pro se, Ortiz petitioned for certiorari review in the circuit court. In a written ruling, the circuit court reversed the decision of the Department and concluded that the sentencing court had the authority to select the rate at which money would be deducted from Ortiz's prison wages and that the Department was required to adhere to the terms of the JOC.[8] The Department appeals.

¶11 We mention other material facts in the following discussion.

## DISCUSSION

¶12 Before proceeding to the main portion of our analysis, we pause to make two points about the potential applicability of Act 355 to the issues in this appeal. As relevant to this appeal, Act 355 amended WIS. STAT. § 301.32(1) (2008-09) and created WIS. STAT. § 973.20(11)(c), a new statutory subpart.[9] Section 973.20(11)(c) now requires that the sentencing court order the defendant "to authorize the department to collect, from the defendant's wages and from other moneys held in the defendant's prisoner's account, an amount or a percentage the department determines is reasonable for payment to victims." *See* 2015 Wis. Act 355, § 15. Additionally, Act 355 added the phrase "victim restitution under s. 973.20(11)(c)" as one of the purposes under § 301.32(1) for which the

---

official capacity and during its pendency … ceases to hold office, the action does not abate and the successor is automatically substituted as a party.").

[8] The circuit court's order mentioned that Ortiz also challenged the Department's 50% deduction from his gifted funds but, as noted, the court did not directly address that argument in its order. We will address that issue in this opinion because it was raised in Ortiz's certiorari petition and is argued by the parties on appeal.

[9] Because WIS. STAT. § 973.20(11)(c) did not exist at the time of Ortiz's sentencing, we refer to the version of § 973.20(11)(c) as it appears in the 2019-20 version of the statutes. However, because the language of WIS. STAT. § 301.32(1) was changed by Act 355, all subsequent references to § 301.32(1) are to the 2008-09 version of that statute.

Department may use money that has been delivered to a prisoner's account. *See* 2015 Wis. Act 355, § 6.

¶13    First, Ortiz argues that the provisions of Act 355 do not apply to him because he was sentenced—and the sentencing court made the order regarding the deduction from his prison wages for payment of restitution—before the provisions of Act 355 became effective. For its part, the Department concedes that those provisions are not applicable to this case. That is, the Department states that WIS. STAT. § 973.20(11)(c) "is irrelevant" and "makes no difference," and that "the Secretary … did not retroactively apply Act 355 [§ 973.20(11)(c)] to Ortiz."

¶14    As a result, we do not rely on Act 355's amendment to WIS. STAT. § 301.32(1) and WIS. STAT. § 973.20(11)(c) in determining whether the Department has the authority to deduct 50% from Ortiz's prison wages and gifted funds for the payment of restitution. Likewise, we do not decide the circumstances in which the provisions of § 973.20(11)(c), when those do potentially apply to a case, permit the Department to independently decide the percentage at which money is deducted from a prisoner's wages or gifted funds for the payment of restitution (generally, the "restitution deduction percentage"). More specifically, we do not decide whether § 973.20(11)(c), in effect, allows the Department to override or nullify an order of a sentencing court made previous to, or after, the effective date of § 973.20(11)(c) regarding the restitution deduction percentage.

¶15    Second, the amended JOC included the following language:

> If the defendant is in or is sentenced to state prison and is ordered to pay restitution, IT IS ORDERED that the defendant authorize the department to collect from the defendant's wages and other monies held in the defendant's inmate account, an amount or percentage which the department determines is reasonable for restitution to victims.

7

This language is similar to the terms of WIS. STAT. § 973.20(11)(c), the new statutory subpart created by Act 355. However, because the Department does not assert that this language in the amended JOC authorizes the Department to set Ortiz's restitution deduction percentage, we do not rely on this language in determining whether the Department has the authority to deduct 50% of Ortiz's prison wages and gifted funds.

¶16 The Department argues that its deduction of 50% of Ortiz's prison wages and gifted funds for the payment of restitution complies with the JOC because the JOC must be interpreted as requiring only that a minimum of 25% of Ortiz's prison wages be deducted for restitution, and the JOC does not limit the Department's authority to deduct 50% of the gifted funds for the payment of restitution. The Department also argues that it has the exclusive authority to select the restitution deduction percentage, and that a sentencing court's contrary order cannot limit that authority in any manner.[10] Ortiz responds that the JOC requires that no more than 25% of his prison wages be deducted to pay his restitution obligation. He also contends that, because the sentencing court did not explicitly allow deductions from gifted funds for payment of restitution and the Department is authorized to deduct only that which is ordered by the sentencing court, therefore the Department is not authorized to deduct any gifted funds from his prison account for payment of restitution.

---

[10] At times, the Department appears to suggest in briefing in this court that a sentencing court lacks any authority whatsoever to direct the restitution deduction percentage. At other times, the Department appears to suggest that the court may have some authority to direct that percentage, but that the language the sentencing court used in the JOC in this case was not sufficiently specific to accomplish that end. For the purposes of our analysis, we assume that the Department takes the position that sentencing courts lack the authority to set the restitution deduction percentages for defendants that the Department is obligated to honor.

¶17    We begin by setting forth the applicable standard of review and governing principles.

## I.  Standard of Review and Governing Principles.

¶18    "On certiorari we review the agency decision, not the decision of the circuit court." *State ex rel. Markovic v. Litscher*, 2018 WI App 44, ¶9, 383 Wis. 2d 576, 916 N.W.2d 202.  On certiorari review, we are limited to the following four inquiries:

> (1) whether the [Department] acted within the bounds of its jurisdiction;  (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the [Department] might reasonably make the determination that it did.

*State ex rel. Greer v. Wiedenhoeft*, 2014 WI 19, ¶35, 353 Wis. 2d 307, 845 N.W.2d 373.  Here, the parties dispute whether the Department acted according to law, and that is a question of law that we review de novo without deference to the conclusions of the Department.  *Id.*, ¶36.

¶19    This appeal requires that we interpret various statutory provisions. "The interpretation and application of statutes present questions of law that we review independently." *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1.

¶20    Statutory interpretation "'begins with the language of the statute.'  If the meaning of the language is plain, our inquiry ordinarily ends." *Id.*, ¶11 (citation omitted).  "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their

technical or special definitional meaning." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶21 "Importantly, ascertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof." ***Brey***, 970 N.W.2d 1, ¶11 (citation omitted). When deciding whether language is plain, courts must read the words in context and with a view to the place of those words in the overall statutory scheme. ***Id.*** "Properly applied, the plain-meaning approach is not 'literalistic'; rather, the ascertainment of meaning involves a 'process of analysis' focused on deriving the fair meaning of the text itself." ***Id.*** (citing ***Kalal***, 271 Wis. 2d 633, ¶¶46, 52). If this "process of analysis" yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning. ***Kalal***, 271 Wis. 2d 633, ¶46.

¶22 This appeal also requires us to interpret the language of the JOC. We interpret a court's judgment in the same manner as other written instruments and, as such, the judgment must be considered "in context." ***Estate of Schultz v. Schultz***, 194 Wis. 2d 799, 805, 535 N.W.2d 116 (Ct. App. 1995). Our review of the meaning of the judgment is a question of law this court reviews de novo. ***Id.*** at 805-06.

¶23 We first consider whether the Department has authority to deduct 50% of Ortiz's prison wages for payment of restitution given the sentencing court's order, and then consider the Department's deduction of 50% of Ortiz's gifted funds.

## II. The Department's 50% Deduction of Ortiz's Prison Wages.

¶24 In analyzing this issue, we initially address the parties' arguments regarding the meaning of the applicable provision of the JOC. We do so because, if the Department's deduction of 50% from Ortiz's prison wages to pay restitution

complies with the terms of the JOC as the Department asserts, then we need not reach the parties' remaining arguments.

### A. The JOC Requires the Department to Deduct 25% of Ortiz's Prison Wages.

¶25 To repeat, the JOC states: "Court ordered restitution to be paid from 25% of prison wages." The Department argues that its deduction of 50% of Ortiz's prison wages does not conflict with this order because the JOC merely sets the "minimum rate" at which the Department must deduct from Ortiz's prison wages to pay his restitution obligation. From that, the Department contends that it complied with the JOC because it deducted 25% of Ortiz's prison wages and then, beyond that, exercised its independent authority to deduct an additional 25%. In contrast, Ortiz responds that the phrase "from 25% of prison wages" "clearly implies a ceiling," not a floor. Based on our independent examination of the words chosen by the sentencing court as we now discuss, we conclude that the sentencing court ordered the Department to deduct *exactly* 25% from Ortiz's prison wages to pay his restitution obligation, not more or less.

¶26 The sentencing court did not qualify the phrase "25% of prison wages" with language suggesting that the 25% is a ceiling or a floor and that a different rate of deduction is allowable. Put another way, the sentencing court did not include any qualifying language that would reasonably lead to the conclusion that the 25% deduction is anything but a precise amount. For example, the court did not use phrases such as "at least 25% of prison wages" or "up to 25% of prison wages." *See State v. Evans*, 2000 WI App 178, ¶¶11, 15, 238 Wis. 2d 411, 617 N.W.2d 220 (holding that a sentencing court's order that defendant pay "[r]estitution up to 25 percent of his prison earnings account" allows the Department

11

to determine the amount of restitution within the specified range). Put differently, the wording of the order is unambiguous. This is not a situation in which the particular wording of a court order is unclear or its intended scope is vague. We reject the Department's interpretation because it would add words to the specific phrasing selected by the sentencing court and change the meaning of the order. *See Schultz*, 194 Wis. 2d at 805 (holding that courts interpret judgments in the same manner as other written instruments); *Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, ¶21, 293 Wis. 2d 458, 718 N.W.2d 631 ("We interpret a contract [(a type of "written instrument")] to give 'reasonable meaning to each provision.'" (citation omitted)). We will not alter the language chosen by the sentencing court by reading additional words into the JOC.

¶27 Next, the Department argues that the meaning of the word "from" in the JOC ("restitution to be paid from 25% of prison wages") limits restitution payments to a particular "source" of funds, but does not limit the "quantity" of those funds to be deducted. We reject this contention. The use of the word "from" indicates both the *source* of Ortiz's restitution payments (*i.e.*, Ortiz's prison wages) and also a specific *quantity* of money (*i.e.*, 25%) from that source. The Department gives no viable explanation why the sentencing court's order regarding Ortiz's restitution payments should be understood as applying solely to the source of money used for those restitution payments, but not the quantity of money from that source.

¶28 In sum, the unambiguous language of the JOC requires the Department to deduct 25% from Ortiz's prison wages, not more and not less. We next turn to the Department's argument that the sentencing court did not have the authority to select the restitution deduction percentage.

### B. The Sentencing Court Had Authority to Order a Restitution Deduction Percentage That the Department Was Required to Honor.

¶29 A sentencing court's authority to order restitution payments is set forth in WIS. STAT. § 973.20. The Department argues that the sentencing court has no authority under § 973.20 to limit what the Department asserts is the Department's exclusive authority to determine the amount that is deducted from a prisoner's wages to pay for restitution.[11] Ortiz responds that the sentencing court has the authority to determine a restitution deduction percentage that must be honored by the Department. For the following reasons, we conclude that the sentencing court has the authority to order that a specified percentage of funds be deducted from Ortiz's prison wages to pay for restitution, which must be honored by the Department.[12]

¶30 First, as background, we summarize a sentencing court's general statutory authority to set restitution and sources for payment of the restitution. The court's authority to impose restitution stems from WIS. STAT. § 973.20(1r), which requires that the court "order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing." Sec. 973.20(1r). In determining "whether to order restitution and the amount thereof," the court is required to consider the "financial resources of the defendant" and the "present and future earning ability of the defendant." Sec. 973.20(13)(a).

---

[11] We address in the next section of this opinion whether the Department has the exclusive authority, when there is an order on point from a sentencing court, to set a restitution deduction percentage from a prisoner's wages.

[12] We sometimes use the term "defendant" in discussing the subject of a court's restitution order because that is the term used in WIS. STAT. § 973.20. The terms "prisoner" and "inmate" are used in the next section of this opinion in discussing the subject of the Department's actions because those are the terms generally used in the statutes applicable to the Department.

¶31    Based on the sentencing court's required consideration of these factors under WIS. STAT. § 973.20(13)(a), it follows that the court is authorized to fashion a restitution order that accounts for the defendant's future earnings and requires the defendant to pay restitution based on those earnings. Accordingly, if a defendant is sentenced to prison and has a restitution obligation, the sentencing court may order the defendant to pay restitution from the defendant's anticipated prison wages. *See **State v. Greene***, 2008 WI App 100, ¶¶12-13, 313 Wis. 2d 211, 756 N.W.2d 411 (stating that the factors under § 973.20(13)(a) authorize a circuit court to order a defendant to pay restitution out of identified categories of funds available to a defendant, including prison wages). Thus, the sentencing court here has the authority to order that Ortiz's restitution obligation be paid by deducting money from his prison wages.

¶32    Second, and more specific to this appeal, we consider whether a sentencing court has authority, which must be honored by the Department, to order that a defendant pay a specific percentage of his or her prison wages to satisfy a restitution obligation. Germane to our analysis is WIS. STAT. § 973.20(10)(a), which provides in relevant part that a sentencing court "may require that restitution be paid immediately, within a specified period or in specified installments."[13] Sec. 973.20(10)(a).

¶33    The parties dispute whether the sentencing court's order that restitution be paid from 25% of Ortiz's prison wages constitutes a "specified installment[]" under WIS. STAT. § 973.20(10)(a), because, if it does, then this statute

---

[13] We note that, under the 2008-09 version of the statutes in effect at the time Ortiz was sentenced, WIS. STAT. § 973.20(10) did not include any subparts. Nonetheless, the text of the current subpart (10)(a) is identical to the text of § 973.20(10), which was in effect when Ortiz was sentenced. *See* 2015 Wis. Act 355, § 13. Thus, for ease of reference, we refer to the text of § 973.20(10)(a) as it appears in the 2019-20 version of the statutes.

supports Ortiz's argument about what sentencing courts may "require" in court orders addressing restitution. The Department argues that the phrase "specified installments" must be interpreted as meaning only a "set dollar amount[] paid at set intervals," as distinguished from payments of a particular percentage at regular intervals. The Department's interpretation cannot be reconciled with the controlling phrase in the statute or applicable case law.

¶34 The parties do not cite—and our research does not reveal—any definition of the phrase "specified installments" in Wisconsin statutes. But, our supreme court has interpreted the meaning of this phrase and stated that a requirement for a defendant to pay $400 per month in restitution in that case constituted a "specified installment[]" under WIS. STAT. § 973.20(10)(a). *State v. Fernandez*, 2009 WI 29, ¶33, 316 Wis. 2d 598, 764 N.W.2d 509. Additionally, we may consult the dictionary definition to ascertain the plain meaning of a term. *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156. Black's Law Dictionary defines the term "installment" as a "periodic partial payment of a debt." *Installment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

¶35 We conclude that the sentencing court's order that restitution be paid from 25% of Ortiz's prison wages is an order to pay restitution in "specified installments" under WIS. STAT. § 973.20(10)(a). Similar to the monthly payments described in *Fernandez*, the sentencing court ordered Ortiz to make periodic partial payments toward his restitution obligation rather than requiring Ortiz to pay the entire amount of his restitution obligation in one lump sum. The definition of the phrase "specified installments" includes a "set dollar amount[] paid at set intervals," as our supreme court instructs. *See Fernandez*, 316 Wis. 2d 598, ¶33. We conclude that the definition also necessarily encompasses periodic partial payments whose precise numerical amount may vary from payment to payment based on a specified

percentage. The Department does not give a cogent argument otherwise. Thus, because the sentencing court "specified" that each "installment" must be equal to 25% of Ortiz's prison wages, the sentencing court's restitution order is authorized by § 973.20(10)(a).

¶36    The Arizona Court of Appeals has rejected an argument very similar to that made here by the Department, and we consider that court's reasoning to be persuasive. In that case, the sentencing court ordered that the defendant satisfy certain court-ordered fines related to his sentence by paying 25% of his net income. *State v. Lopez*, 853 P.2d 1126, 1127 (Ariz. Ct. App. 1993). The controlling statute in that case was ARIZ. REV. STAT. § 13-808(A) (1992), which stated: "[i]f a defendant is sentenced to pay a fine alone or in addition to any other sentence, the court ... may grant permission for payment to be made *within a specified period or in specified installments*." *Id.* (emphasis added). Lopez argued that the term "specified installments" required the sentencing court to set forth "precise amounts" of monthly payments. *Id.* The Arizona Court of Appeals rejected this argument and held that "ordering defendant to pay 25% of his net income suffices as a 'specified installment.'" *Id.* at 1128. The court reasoned that the difference between a percentage and a specified monthly amount is "one of form," and that either approach "clearly sets forth the necessary information for defendant to calculate his obligation." *Id.* at 1127-28. Similarly, in the present case, the sentencing court's order that Ortiz pay 25% of his prison wages constitutes a "specified installment" under WIS. STAT. § 973.20(10)(a) because it provides the necessary information for Ortiz and the Department to calculate his restitution payment and allows Ortiz to know "exactly what his obligation is when it accrues." *See id.*

¶37    In sum, the sentencing court is statutorily authorized in these circumstances to order that Ortiz's restitution obligation be paid from a percentage

of his prison wages. We next consider, and reject, the Department's arguments that it is has exclusive authority to set Ortiz's restitution deduction percentage.

## C. The Department Does Not Have Exclusive Authority to Determine the Deduction From Prison Wages.

¶38     The Department argues that it has the exclusive authority under WIS. STAT. §§ 301.32(1), 301.31, and 303.01(8)(b), and what the Department refers to as "common law" authority, to set the rate at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation. For the following reasons, and pursuant to the statutes applicable in these circumstances, we conclude that the Department does not have exclusive authority to select a restitution deduction percentage and does not have the authority to set percentages that conflict with an order from a sentencing court. Accordingly, the Department was not authorized to deduct 50% of Ortiz's prison wages to pay his restitution obligation. We now address these issues in four subsections.

### 1. WISCONSIN STAT. § 301.32(1).[14]

¶39     The Department relies on WIS. STAT. § 301.32(1), which provides in relevant part:

> All money and other property delivered to an
> employee of any state correctional institution for the benefit

---

[14] Ortiz and the Department both assert that WIS. STAT. § 301.32(1), which addresses "money and other property delivered" to the Department for a prisoner's benefit, encompasses prison wages as well as other sources of funds. Neither party cites any authority for this position, and the *Markovic* case, discussed below, does not state that § 301.32(1) pertains to prison wages. *See State ex rel. Markovic v. Litscher*, 2018 WI App 44, ¶¶35, 38, 383 Wis. 2d 576, 916 N.W.2d 202. For purposes of this opinion, we assume without deciding that § 301.32(1) relates to how the Department handles prison wages.

17

> of a prisoner or resident shall be delivered to the warden or superintendent, who shall enter the property upon his or her accounts to the credit of the prisoner or resident. The property may be used only under the direction and with the approval of the superintendent or warden and for … the benefit of the prisoner or resident.

Sec. 301.32(1) (2008-09).[15]   The Department concedes that § 301.32(1) merely outlines, in the words of the Department, its "general authority" to control money in prisoners' accounts, and does not explicitly grant authority to the Department to set the percentage at which funds are deducted from a prisoner's wages to pay restitution.   Nonetheless, relying on *Markovic*, the Department argues that it is authorized to deduct more money from Ortiz's prison wages for the payment of restitution than was ordered by the sentencing court because the deduction of that additional money is for Ortiz's benefit under § 301.32(1).

¶40   In *Markovic*, this court interpreted the phrase "for ... the benefit of the prisoner" as used in WIS. STAT. § 301.32(1).  In that case, a sentencing court entered a judgment of conviction that imposed a prison sentence and restitution. *Markovic*, 383 Wis. 2d 576, ¶5.  Markovic completed his prison sentence without paying his restitution obligation in that case, but remained in prison on a separate sentence. *Id.* While Markovic was serving this separate sentence, the Department began deducting money that had been delivered to his prison account to satisfy his unpaid restitution ordered with the initial sentence. *Id.*, ¶6.  This court held that the Department was authorized to use the money delivered to Markovic's prison account because paying restitution to victims was "'for the benefit of' Markovic"

---

[15] As discussed above, Act 355 added one phrase to WIS. STAT. § 301.32(1) that specifically pertains to restitution.  Aside from this one added phrase, however, the language under § 301.32(1) now is identical to the language that was in effect at the time of Ortiz's sentencing. *See* 2015 Wis. Act 355, § 6.  Neither the Department nor Ortiz rely on the Act 355 amendments to § 301.32(1) in briefing in this court, as discussed earlier.

under § 301.32(1), even though Markovic had completed his sentence imposed in the judgment that ordered the restitution. *Id.*, ¶33.

¶41 The Department analogizes this case to the facts of *Markovic*. It argues that, if the deduction of money from a prisoner's account is permitted after a restitution order has not been satisfied prior to completion of a sentence, then its deduction of more money from Ortiz's prison wages than was ordered by the sentencing court must also be permitted. We disagree because the Department does not explain how its asserted authority regarding Ortiz's prison wages flows from this court's conclusion in *Markovic* or why the analysis in *Markovic* should apply when the sentencing court's order regarding Ortiz's prison wages remains in effect. Contrary to the Department's argument, *Markovic* does not discuss whether the Department has the exclusive authority to set restitution deduction percentages or whether the Department can set restitution deduction percentages contrary to the terms of a court order. *See id.* Rather, *Markovic* provides that the Department is authorized to use money delivered to a prisoner's account to satisfy unpaid restitution because paying restitution provides a benefit to the prisoner. *Id.*

¶42 Accordingly, the text of WIS. STAT. § 301.32(1) does not grant exclusive authority to the Department to set the percentage at which money is deducted from a prisoner's wages to pay a restitution obligation and does not bar the sentencing court from setting that percentage in its restitution order.

## 2. WISCONSIN STAT. § 301.31.

¶43 The Department argues that it has the exclusive statutory authority under WIS. STAT. § 301.31 to set the percentage at which it deducts money from Ortiz's prison wages to pay for restitution. This statute provides, in pertinent part: "The [D]epartment may provide … for the payment, either in full or ratably, of

[prisoners'] obligations … which have been reduced to judgment by the allowance of moderate wages." Sec. 301.31. The Department relies on this use of the term "ratably." According to the Department, that word grants exclusive authority to the Department to set the "rates" at which prisoner's wages are deducted to pay court-ordered restitution.

¶44 We reject the Department's argument. The plain meaning of WIS. STAT. § 301.31 indicates that the Department is authorized to provide "moderate wages" to prisoners for their work, and that these wages may be used by the Department to pay obligations reduced to judgment—such as restitution[16]—either in full or "ratably."[17] The statute's use of the term "ratably" in this context establishes that some prisoners' payment obligations reduced to judgment may be "apportioned," such as the "specified installments" that may be imposed by the sentencing court under WIS. STAT. § 973.20(10)(a), as has already been discussed. Section 301.31 does not state that the Department has the authority to determine that rate or percentage, much less that it has the *exclusive* authority to do so, and the Department gives us no basis to conclude that this statute provides such authority. Moreover, that statute does not state that the Department can set a percentage for payments of a prisoner's obligation that conflicts with a sentencing court's order.

---

[16] Addressing similar language in WIS. STAT. § 303.01(8)(b), this court has held that "a judgment of conviction including an order to pay restitution is an 'other obligation[] ... reduced to judgment that may be satisfied according to law.'" *State v. Baker*, 2001 WI App 100, ¶17, 243 Wis. 2d 77, 626 N.W.2d 862. Accordingly, a judgment of conviction, including an order to pay restitution, is an obligation that has been "reduced to judgment" under WIS. STAT. § 301.31.

[17] Wisconsin statutes do not define the terms "ratable" or "ratably." Consulting the dictionary definition, the term "ratable" means "capable of being estimated, appraised, or apportioned." *Ratable*, BLACK'S LAW DICTIONARY (11th ed. 2019).

### 3. WISCONSIN STAT. § 303.01(8)(b).

¶45 The Department briefly argues that WIS. STAT. § 303.01(8)(b) provides some authority to the Department to set restitution deduction rates. This section states in relevant part: "The [D]epartment shall distribute earnings of an inmate ... for other obligations ... which have been reduced to judgment that may be satisfied according to law." Sec. 303.01(8)(b). As noted, "a judgment of conviction including an order to pay restitution is an 'other obligation[] ... reduced to judgment that may be satisfied according to law.'" *State v. Baker*, 2001 WI App 100, ¶17, 243 Wis. 2d 77, 626 N.W.2d 862.

¶46 There is no dispute that the Department has authority under WIS. STAT. § 303.01(8)(b) to "distribute" a prisoner's wages to satisfy the prisoner's restitution obligation. *Markovic*, 383 Wis. 2d 576, ¶22 (citing *Baker*, 243 Wis. 2d 77, ¶17). However, in the context of these circumstances, the Department's authority under this section depends on an order from the sentencing court requiring the defendant to pay restitution under WIS. STAT. § 973.20, including an order under § 973.20(10)(a) that such restitution be paid in "specified installments." *See* § 303.01(8)(b) ("obligations … reduced to judgment"). Nothing in this statute authorizes the Department to "distribute earnings of" a prisoner in a manner that conflicts with the terms of a restitution order entered by a sentencing court. Here, the sentencing court ordered Ortiz to pay restitution and, as explained earlier, the sentencing court exercised its authority under § 973.20(10)(a) to require that Ortiz's restitution obligation be paid from 25% of his prison wages. Section 303.01(8)(b) does not state that the Department has the authority to set the percentage at which money is deducted from Ortiz's wages to pay restitution or that the Department has authority to do so if the sentencing court and the Department disagree on that percentage.

#### 4. *State v. Williams* and the Department's Purported "Common Law" Authority.

¶47    The Department relies on language in this court's decision in *State v. Williams*, 2018 WI App 20, 380 Wis. 2d 440, 909 N.W.2d 177, for the proposition that the Department has what it refers to as a "common law" exclusive authority to set the restitution percentage deduction. We disagree.

¶48    Williams requested that the sentencing court order the Department to stop taking funds from his prison account to pay his restitution obligation. *Williams*, 380 Wis. 2d 440, ¶1. This court concluded that the sentencing court did not have competency to address Williams' motion because Williams was required to raise his complaint through the inmate complaint review system, not in a motion to the sentencing court. *Williams*, 380 Wis. 2d 440, ¶1. That holding is not in dispute in this appeal. Rather, the parties discuss another aspect of *Williams*.

¶49    Williams also argued that the statutory amendments made by Act 355 did not apply to him. *Id.*, ¶2 n.2. As relevant to *Williams* and this case, Act 355 created WIS. STAT. § 973.20(11)(c),[18] and we now repeat that statutory subpart:

> If a defendant who is in a state prison or who is sentenced to a state prison is ordered to pay restitution, the court order shall require the defendant to authorize the department to collect, from the defendant's wages and from other moneys held in the defendant's prisoner's account, an amount or a percentage the department determines is reasonable for payment to victims.

*See* 2015 Wis. Act 355, § 15.

---

[18] As noted earlier, WIS. STAT. § 973.20(11)(c) was created by Act 355 and did not exist at the time of Ortiz's sentencing. For ease of reference, we refer to the version of § 973.20(11)(c) as it appears in the 2019-20 version of the statutes.

¶50    Addressing Williams' arguments about Act 355, this court provided the following description of the law regarding restitution payments and the amendments to statutes through Act 355:

> It has long been the law that restitution may be disbursed from an inmate's prison account. *See State v. Greene*, 2008 WI App 100, ¶12, 313 Wis. 2d 211, 756 N.W.2d 411; *State v. Baker*, 2001 WI App 100, ¶¶17-19, 243 Wis. 2d 77, 626 N.W.2d 862.   In 2015, WIS. STAT. §§ 301.32(1) and 973.20(11)(c) codified the common law by specifically authorizing the [Department] to take restitution from an inmate's account at "an amount or a percentage the [Department] determines is reasonable for payment to victims." *See* 2015 Wis. Act 355 (Act 355).

*Id.*, ¶2.

¶51    The Department relies on these statements in *Williams* to assert that, without reference to the enactment of WIS. STAT. § 973.20(11)(c) through Act 355, the "common law" is that the Department has the exclusive authority to determine the rate at which a prisoner's wages are used to satisfy a restitution obligation.  We reject the Department's contention for several reasons, any of which are sufficient.

¶52    First, Wisconsin law establishes that the statements in *Williams* that the Department relies on cannot alone authorize the Department to set the percentage at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation.  Under WIS. STAT. § 227.10(2m), an administrative agency must have explicit authority under a statute or rule to undertake actions:

> No agency may implement or enforce any standard, requirement, or threshold, including as a term or condition of any license issued by the agency, unless that standard, requirement, or threshold is *explicitly required or explicitly permitted by statute or by a rule* that has been promulgated in accordance with this subchapter.

23

Sec. 227.10(2m) (emphasis added); *see also* **Papa v. DHS**, 2020 WI 66, ¶32, 393 Wis. 2d 1, 946 N.W.2d 17 (holding that an agency may not implement or enforce a policy "unless it is explicitly required or permitted to do so by statute or a previously promulgated rule"). Thus, here, **Williams** alone cannot authorize the Department to set restitution deduction rates because neither the quoted statements in **Williams** nor the Department's ambiguous assertion of "common law" are a statute or a properly promulgated administrative rule. *See* § 227.10(2m).

¶53 Second, the Department's argument on this point is undeveloped. *See* **State v. Pettit**, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge"). The Department fails to explain what the "common law" is that Act 355 purportedly codified. Even though the Department had the opportunity in briefing to explain this assertion about the common law, the Department provides this court with nothing more than the statements from **Williams** quoted above and its citation to "2015 Wis. Act 355." In fact, our research does not reveal any support under Act 355 for the Department's interpretation. Neither the text of Act 355 nor the textual amendment to WIS. STAT. § 973.20(11)(c) state that the Department ever had such "common law" authority. Nothing in the legislative history of Act 355 reveals any indication that the Department had such "common law" authority or that the legislature intended to codify common law authority. The Department has not provided any basis for its interpretation of **Williams**.

¶54 Third, the only reasonable meaning of the disputed language in **Williams** undermines the Department's argument. When this court used the phrase "common law" in the second sentence of paragraph 2 of **Williams**, it was referring to the "case law" of **Baker** and **Greene** as noted in the previous sentence. *See*

24

*Common Law*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "common law" as "[t]he body of law derived from judicial decisions, rather than from statutes or constitutions"). *Baker* and *Greene* state that money can be disbursed from a prisoner's account, but those opinions do not state that the Department may set the percentage at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation.

¶55 The second sentence of paragraph 2 in *Williams* reaches two separate conclusions: (1) the "common law" (case law) states that money can be disbursed from a prisoner's account; and (2) going forward, the newly created WIS. STAT. § 973.20(11)(c) quoted in the latter part of that sentence authorizes the Department to determine the restitution deduction rate. Accordingly, when *Williams*, 380 Wis. 2d 440, ¶2, states that Act 355 "codified the common law," this court was referring only to the codification of the case law principles from *Baker* and *Greene* (which were, in turn, based on statutes) that restitution may be disbursed from prisoners' accounts. Further, because neither *Baker* nor *Greene* stand for the principle that the Department may set the percentage at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation, this court's statement that Act 355 "codified the common law" could not refer to legislature's creation of § 973.20(11)(c). Therefore, *Williams* does not establish that the Department has "common law" authority to set the rate at which money is deducted from Ortiz's prison wages to pay his restitution obligation.[19]

---

[19] We observe that Ortiz relies on an unpublished, per curiam opinion from this court to support his argument that the Department erroneously relied on the passage from *Williams*. While unpublished opinions issued after July 1, 2009, may be cited for persuasive value, this is true only as to *authored* opinions, which do not include per curiam opinions. *See* WIS. STAT. RULE 809.23(3). We disregard any argument relying on the unpublished per curiam decision.

¶56 Summarizing our discussion on all four of these issues based on the authorities applicable in these circumstances, the Department does not have the exclusive statutory or common law authority to set the percentage at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation, and the Department does not have the authority to set a percentage that conflicts with an order from the sentencing court.

## D. The Department Must Adhere to the 25% Restitution Deduction Rate Ordered by the Sentencing Court.

¶57 The Department makes an additional argument regarding deductions from Ortiz's wages that we now discuss.

¶58 As explained, the sentencing court has authority under WIS. STAT. § 973.20(10)(a) and (13)(a) to require that Ortiz's restitution obligation be paid from 25% of his prison wages, and the sentencing court exercised that authority. Nonetheless, the Department contends that its policy regarding deductions from a prisoner's wages for payment of restitution prevails over a conflicting sentencing court order. More particularly, the Department argues that its statutory authority under WIS. STAT. §§ 301.32(1), 301.31, and 303.01(8)(b) prevails over the court's statutory authority under § 973.20(10)(a) because the Department's authority "specifically" applies to prisoners and restitution deduction percentages, whereas the court's authority applies only "generally" to criminal defendants.

¶59 "When statutes on the same subject matter appear to conflict, we have a duty to construe the statutes 'in a manner that harmonizes them in order to give each full force and effect.'" *Westra v. State Farm Mut. Auto. Ins. Co.*, 2013 WI App 93, ¶10, 349 Wis. 2d 409, 835 N.W.2d 280 (quoting *State v. Jeremiah C.*, 2003 WI App 40, ¶17, 260 Wis. 2d 359, 659 N.W.2d 193). "However, if conflicting

statutes on the same subject matter cannot be reconciled, the more specific statute controls." *Id.* (citing *Clean Wis., Inc. v. PSC*, 2005 WI 93, ¶175, 282 Wis. 2d 250, 700 N.W.2d 768). For example, in *Westra*, after holding that two insurance coverage statutes were "irreconcilable," this court concluded that one of the statutes was more specific because it applied to a "narrower class" of insurance coverage and "specifically applie[d] to the type of coverage at issue" in that case. *Id.*, ¶27.

¶60 Here, we do not accept two propositions offered by the Department: that the statutes on which the Department relies authorize the Department to set the percentage at which restitution is deducted from a prisoner's wages to pay restitution contrary to a sentencing court's order, and that these statutes are "irreconcilable" with the sentencing court's authority under WIS. STAT. § 973.20. Regardless, if we assume for the moment that the Department's propositions are correct, we conclude that § 973.20(10)(a) is more specific than the statutes on which the Department relies. WISCONSIN STAT. §§ 301.32(1), 301.31, and 303.01(8)(b) give the Department general authority over aspects of handling prisoners' money, property, and wages. In contrast, § 973.20(10)(a) specifically authorizes the court to order that restitution be paid in "specified installments." Therefore, even if the Department's general statutory authority to manage prisoners' money and property includes the authority to set the percentage at which money is deducted from a prisoner's wages to pay the prisoner's restitution obligation contrary to a court order (and it does not), we would still conclude that the Department is required to adhere to the restitution deduction percentage set by the sentencing court.

¶61 To summarize, based on the statutes applicable in these circumstances, the legislature has not provided authority to the Department to set a different restitution deduction percentage than was ordered by the sentencing court, and the sentencing court's authority to determine that percentage cannot, in effect,

be overridden by the general authority provided by the statutes on which the Department relies. Therefore, because the JOC requires that *exactly* 25% of Ortiz's wages be periodically deducted, and because the Department has no authority to select a different restitution deduction percentage, the Department is obligated to deduct for the payment of restitution 25% of Ortiz's wages, not more or less. For those reasons, we conclude that the Department did not act according to law when it deducted 50% of Ortiz's prison wages to pay his restitution obligation.[20] *See Greer*, 383 Wis. 2d 576, ¶35 (on certiorari review, we determine "whether [the Department] acted according to law").

### III. The Department is Not Prohibited From Deducting 50% of the Gifted Funds Deposited in Ortiz's Prison Account.

¶62     The parties also dispute whether the Department has the authority to deduct 50% of the gifted funds deposited in Ortiz's prison account to pay his restitution obligation. The Department argues that the JOC does not prohibit it from deducting money from Ortiz's gifted funds and that it has the authority to deduct

---

[20] Ortiz argues that the Department's deduction of 50% of his wages was arbitrary and an unreasonable interpretation of the evidence under the certiorari review rubric and further deprived him of his due process rights. Because we conclude that the Department did not act according to law when it decided to deduct 50% of Ortiz's prison wages, we need not address Ortiz's additional arguments. *Lamar Cent. Outdoor, LLC v. DHA*, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged." (quoted source omitted)).

In addition, Ortiz initially filed a pro se response brief and the Department filed a reply brief based on that pro se brief. After we appointed appellate counsel for Ortiz, we ordered Ortiz's appellate counsel to file a substitute respondent's brief and the Department's counsel to file a substitute reply brief. For the purposes of this appeal, we consider the arguments presented in the substitute response and reply briefs. To the extent that the substitute response brief attempts to incorporate by reference arguments made in the original brief Ortiz filed pro se, we do not consider those incorporated arguments.

28

such gifted funds at any reasonable rate to pay Ortiz's restitution obligation. In response, Ortiz makes one argument: the JOC does not explicitly authorize the Department to deduct from Ortiz's gifted funds for the payment of restitution, and the Department has no authority to use a prisoner's gifted funds for payment of restitution absent an explicit order from the sentencing court granting the Department that authority. For the following reasons, we reject Ortiz's contention and conclude that the Department is not prohibited from deducting 50% of his gifted funds.[21]

¶63    First, the text of the JOC is silent as to whether Ortiz is required to pay his restitution obligation from the gifted funds deposited in his prison account. But, unlike the JOC's order that Ortiz pay 25% of his prison wages, the JOC does not place any limit on the amount of money that may be deducted from Ortiz's gifted funds. To repeat, Ortiz asserts that the JOC prohibits the Department from deducting money from his gifted funds because the JOC does not specifically require that money be deducted from those funds. However, the JOC's silence on the topic of gifted funds is not equivalent to a prohibition on the Department regarding the use of those funds to pay restitution. If we were to accept Ortiz's argument and interpret the JOC as prohibiting the use of gifted funds, we would be required to interpret the JOC as requiring that restitution be paid "only" from Ortiz's prison wages. As explained earlier in ¶26, above, we will not alter the language chosen by the sentencing court by reading into the order additional words. Thus,

---

[21] The parties do not indicate—and our review of the record does not reveal—whether Ortiz's prison account at pertinent times has contained funds other than those from his wages and gifted funds. Nonetheless, the parties dispute only the Department's authority to deduct 50% of Ortiz's wages and gifted funds, and we do not address any other funds that have been in Ortiz's account at pertinent times.

the JOC does not prohibit the Department from deducting money from Ortiz's gifted funds for payment of restitution.

¶64    Second, we conclude that, in these circumstances, the Department has the authority to deduct money from Ortiz's gifted funds to pay for restitution. As explained earlier, WIS. STAT. § 301.32(1) provides general authority to the Department to use money or property delivered to a prisoner's account for "the benefit of the prisoner." Further, in *Markovic*, this court held that the Department may use the funds that are separate from prison wages and that have been delivered to a prisoner's account "from outside the prison" to satisfy unpaid restitution because paying restitution to victims benefits the prisoner. *Markovic*, 383 Wis. 2d 576, ¶¶5, 33, 35, 38. Based on *Markovic*, the Department has authority to deduct money from a prisoner's gifted funds for payment of restitution, so long as the Department's deduction of that money does not conflict with an order from the sentencing court.

¶65    Ortiz relies on *Greene* and suggests that only the sentencing court is authorized to determine whether a prisoner's gifted funds may be used to pay the prisoner's restitution obligation. *Greene* holds that the sentencing court has authority to "order a defendant to pay restitution out of all funds held or available to a defendant, including gifted funds," *Greene*, 313 Wis. 2d 211, ¶12. But, *Greene* does not consider whether the sentencing court has the exclusive authority to determine whether a prisoner's gifted funds may be used to satisfy unpaid restitution.

¶66    For these reasons, we reject Ortiz's arguments and conclude that the Department is authorized to deduct 50% of Ortiz's gifted funds to pay his restitution obligation.

30

**CONCLUSION**

¶67 For all of these reasons, we affirm in part and reverse in part, and remand this matter to the circuit court with directions to enter an order requiring the Department to deduct 25% of Ortiz's prison wages for the payment of restitution pursuant to the amended judgment of conviction, and allowing the Department to deduct 50% of Ortiz's gifted funds for the payment of restitution, consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.