**2022 WI APP 34**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2020AP1949

Complete Title of Case:

**STATE OF WISCONSIN EX REL. DELOREAN BRYSON,**

    **PETITIONER-APPELLANT,**

    **V.**

**KEVIN CARR,**

    **RESPONDENT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | June 30, 2022 |
| Submitted on Briefs: | May 12, 2022 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Graham, and Nashold, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *DeLorean Bryson*, pro se. |
| Respondent ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the briefs of *Steven C. Kilpatrick*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

June 30, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP1949**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV2493

IN COURT OF APPEALS

---

STATE OF WISCONSIN EX REL. DELOREAN BRYSON,

　PETITIONER-APPELLANT,

V.

KEVIN CARR,

　RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County:  DAVID CONWAY, Judge.  *Reversed in part and cause remanded with directions*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

¶1　GRAHAM, J. DeLorean Bryson is a Wisconsin inmate who challenges the authority of the Department of Corrections to deduct 50 percent of his prison wages and gifted funds to pay certain mandatory surcharges and court fees.  Bryson's argument is based on language in his judgment of conviction, which

purports to limit the Department's deductions to "25% of prison funds," and his interpretation of the sentencing court's statutory authority to set the percentage at which inmate funds are deducted to pay surcharges and court fees.

¶2      For the reasons set forth below, and consistent with this court's recent decision in *State ex rel. Ortiz v. Carr*, 2022 WI App 16, ¶18, 401 Wis. 2d 450, 973 N.W.2d 786, we conclude that Bryson's judgment of conviction unambiguously purports to limit the Department's authority to deduct funds for surcharges and court fees to 25 percent.  We further conclude that the Department has the exclusive authority to set the deduction percentage for the surcharges, but we accept the Department's concession that it does not have that same authority as to court fees. Although we conclude that the sentencing court exceeded its authority by entering a judgment that purports to cap the deduction rate for the surcharges, we accept the Department's concession that it is required to follow the language in Bryson's judgment of conviction unless and until it is amended by the sentencing court. Therefore, we reverse in part and remand to the circuit court with directions.

## BACKGROUND

¶3      Bryson was convicted in Milwaukee County Case No. 2013CF5740 and is serving his sentence in a Wisconsin prison.  Following his conviction, and consistent with various statutes discussed below, Bryson was ordered to pay the following surcharges and costs:  a crime victim and witness assistance surcharge (hereinafter "victim-witness surcharge") in the amount of $184; a DNA analysis surcharge ("DNA surcharge") in the amount of $500; a crime laboratories and drug law enforcement surcharge ("crime labs surcharge") in the amount of $26; and court

fees in the amount of $326.[1]  Bryson was not ordered to pay restitution.  Bryson's September 30, 2014 judgment of conviction (JOC) states:  "Pay DNA surcharge, all other applicable costs and any other surcharges and assessments.  To be collected by DOC from 25% of prison funds[.]"

¶4     The Department maintains inmate trust accounts for the benefit of inmates in its custody.[2]  As we understand from the parties' submissions, inmate trust accounts typically contain prison wages and gifted funds.  For some time following his conviction, consistent with the above-quoted language in Bryson's JOC, the Department deducted 25 percent from Bryson's prison wages and gifted funds to pay the surcharges and fees.  Then, in July 2016, the Department announced a new policy.  Going forward, the Department would deduct 50 percent of Bryson's prison wages and gifted funds to pay his surcharges and fees.[3]

¶5     Bryson filed an inmate complaint challenging this new deduction percentage rate.  Among other things, he argued that deductions are capped at 25 percent by WIS. STAT. § 973.04 and the language of his JOC, and that neither the

---

[1] The portion of the JOC that identifies the surcharges and court fees is not in the administrative record compiled by the Department.  However, the circuit court took judicial notice of the nature and amount of the surcharges and fees from Bryson's court records.  *See State ex rel. Hippler v. City of Baraboo*, 47 Wis. 2d 603, 614, 178 N.W.2d 1 (1970); *Lumby v. Lumby*, 116 Wis. 2d 347, 349, 341 N.W.2d 725 (Ct. App. 1983).

[2] *See* WIS. STAT. § 301.32(1) (providing that the warden or superintendent of a prison must establish trust accounts for inmate funds and further providing authority for the warden or superintendent to distribute such funds for certain purposes).

[3] This policy, called the Division of Adult Institutions Policy No. 309.45.02, also addresses deductions for restitution.

3

new Department policy nor any recent legislative amendments could override that cap.

¶6 An inmate complaint investigator dismissed Bryson's complaint.[4] Bryson appealed the dismissal to the corrections complaint examiner, who recommended that the appeal be denied. The examiner cited WIS. STAT. §§ 301.001, 301.03, 301.31, 301.32, 302.04, 973.045(4), 973.046(4), and the Department's new policy as authority for the Department to determine the deduction percentage for surcharges and court fees. The Secretary of the Department agreed with this recommendation and denied Bryson's appeal.[5]

¶7 Bryson then petitioned the circuit court for a writ of certiorari, requesting review of the Department's decision.[6] Following briefing by the parties, the circuit court issued a decision granting Bryson's petition in part and denying it in part. As noted below, we review the agency decision and not the decision of the

[4] By way of explanation, the investigator indicated that "DOC's present policy … is supported by" WIS. STAT. § 973.20(11)(c), which "provides the DOC with authority to determine an amount or percentage reasonable to collect and remit restitution payments from inmate wages and from other moneys in the inmate's account." It is undisputed that this rationale is inapt. Section 973.20(11)(c) was created by 2015 Wis. Act 355 and specifically pertains to restitution. However, as noted above, Bryson did not owe any restitution, and the Department was instead deducting funds to pay his non-restitution obligations. The parties agree that neither § 973.20(11)(c) nor any other statutory changes made by Act 355 are material to the issues in this appeal.

[5] Cathy Jess was the Secretary of the Department at the time that Bryson's petition was filed, and Kevin Carr is the current Secretary. Because Bryson's certiorari action named Jess in her official capacity, we order the caption amended to name Carr as the respondent in this action. *See* WIS. STAT. § 803.10(4)(a) ("When a public officer … is a party to an action in an official capacity and during its pendency … ceases to hold office, the action does not abate and the successor is automatically substituted as a party.").

[6] On April 1, 2019, upon agreement between the parties, the circuit court ordered a stay of proceedings pending a court of appeals decision in *State ex rel. Kerby v. Litscher*, No. 2018AP284, unpublished slip. op. (WI App April 16, 2020). Our decision in *Kerby* did not resolve the issues in this case, and the stay was lifted.

circuit court. However, a brief summary of the court's analysis may assist the reader in framing the various issues implicated in this case.

¶8　The circuit court granted Bryson's petition as to the victim-witness surcharge. Although the court determined that the Department has exclusive statutory authority to set the deduction percentage for that surcharge pursuant to WIS. STAT. § 973.045(4), it also determined that the Department had previously exercised that authority by adopting WIS. ADMIN. CODE § DOC 309.465, which sets the percentage at 25 percent. The court determined that the Department's new policy could not override that provision in the administrative code, and therefore, that the Department exceeded its legal authority by deducting funds for the victim-witness surcharge at a rate of 50 percent.

¶9　As for the remaining items, the circuit court observed that there are not any comparable administrative code provisions specifically setting the deduction percentage for the DNA surcharge, the crime labs surcharge, or court fees. Based on its examination of the statutes, the court determined that a sentencing court does not have statutory authority to set the deduction percentage for those items, and that the authority to set those percentages belongs exclusively to the Department.[7] The court interpreted the language in Bryson's JOC and determined that it does not purport to limit the Department from exercising "its statutory authority to collect an additional percentage above what the JOC requires." The

---

[7] In its decision, the circuit court briefly noted that the Department's new policy setting the deduction percentage at 50 percent had not been promulgated as a rule pursuant to the rulemaking procedures set forth in the Wisconsin Administrative Procedure Act, found in WIS. STAT. ch. 227. The court also noted that Bryson had not challenged the Department's authority to effect a change in the deduction percentage through an informal policy, as opposed to doing so by using the rulemaking process. Although Bryson now advances an argument on appeal that the Department's new policy was adopted in violation of the Administrative Procedure Act, we do not address this argument because Bryson did not raise the issue during the circuit court proceedings in the manner required under WIS. STAT. § 227.40(3).

court left "for another day the question of whether the [Department] must seek corrective relief from a JOC that purports to limit [the Department's] rate-setting ability to no more than 25 percent or to otherwise exercise authority that a sentencing court does not have."

¶10 Bryson appeals the circuit court order, challenging the court's determinations about the DNA surcharge, the crime labs surcharge, and the court fees. The Department has not cross-appealed the portion of the order addressing the victim-witness surcharge, and we address the victim-witness surcharge no further.

## DISCUSSION

¶11 In an appeal of a circuit court decision on a petition for certiorari review, this court reviews the challenged decision by the agency (here, the Department), not the decision made by the circuit court. *Ortiz*, 401 Wis. 2d 450, ¶18. Our review is limited to: "'(1) whether the Department acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable,'" representing its will rather than its judgment; "'and (4) whether the evidence was sufficient that the Department might reasonably make the decision that it made.'" *Id.* (quoted source omitted).

¶12 In this case, the issue can be framed as whether the Department acted according to law when it increased the percentage at which it deducted funds from Bryson's inmate trust account to pay the DNA surcharge, the crime labs surcharge, and court fees. In addressing the parties' arguments on this issue, we are required to interpret various statutes and the language of Bryson's JOC. Statutory interpretation and the interpretation of court orders present issues of law, which we review de novo and without deference to the interpretations given by the Department or the circuit court. *Id.*, ¶¶19, 22.

6

¶13    The issues raised by Bryson's petition are related but not identical to issues raised in a number of cases that have recently been before this court. The most notable such case is ***Ortiz***, 401 Wis. 2d 450, which was decided by this court earlier this year. Because the ***Ortiz*** decision is instrumental to our analysis, we begin by summarizing its conclusions at some length. Following that summary, we turn to the particular issues raised in Bryson's case.

**I**

¶14    Ortiz was an inmate who had been ordered to pay restitution by the sentencing court. ***Id.***, ¶5. Ortiz's JOC stated: "Court ordered restitution to be paid from 25% of prison wages." ***Id.***, ¶1. Shortly after Ortiz started serving his sentence, the Department started deducting 50 percent of his prison wages and gifted funds for restitution payments. ***Id.***, ¶8. Ortiz challenged the Department's action, arguing that the Department did not have authority to deduct these funds at a higher percentage than the percentage ordered by the sentencing court. ***Id.***

¶15    We first rejected the Department's interpretation of the JOC. ***Id.***, ¶¶25-28. The Department argued that its 50 percent deductions did not conflict with the JOC, and that the JOC must be interpreted as merely setting a minimum percentage rate for the Department's deductions. ***Id.***, ¶25. We disagreed, explaining that the language of the JOC unambiguously ordered the Department to deduct "exactly 25%," "not more or less," from Ortiz's prison wage "to pay his restitution obligation." ***Id.***, ¶25 (emphasis omitted).

¶16    We then determined that the sentencing court had statutory authority to determine the percentage or amount that was to be deducted from funds in Ortiz's prison accounts for the payment of restitution. Our analysis was based on our

interpretation of WIS. STAT. § 973.20, a statute that specifically governs restitution.[8] That statute generally provides a sentencing court with authority to impose restitution, and requires the court to fashion a restitution order that accounts for the defendant's "'financial resources'" and "'present and future earning ability.'" *Ortiz*, 401 Wis. 2d 450, ¶¶30-31 (quoting § 973.20(13)(a)). Additionally, § 973.20(10)(a) provides that a sentencing court "may require that restitution be paid immediately, within a specified period or in specified installments." *Id.*, ¶32. We concluded that the sentencing court's order that restitution would be paid from 25 percent of Ortiz's prison wages was consistent with the court's authority under § 973.20(10)(a) to order that restitution be paid in "specified installments" as determined by the sentencing court. *Id.*, ¶35.

¶17 Next, we determined that the Department did not have "exclusive authority" to determine a deduction percentage, or to set a different deduction percentage that conflicted with the court's order. *Id.*, ¶¶38-56. Our analysis was primarily driven by the language of WIS. STAT. §§ 301.01, 301.32(1), and 303.01(8)(b), which are statutes governing the Department's authority over prison wages and inmate accounts. *Id.*, ¶¶41, 44, 46.

¶18 Finally, we determined that, although the sentencing court's restitution order precluded the Department from deducting 50 percent of Ortiz's prison wages for restitution, it did not preclude the Department from deducting 50 percent of Ortiz's gifted funds for that purpose. *Id.*, ¶¶62-66. The JOC was

---

[8] During the briefing in *Ortiz*, the parties to that case agreed that certain amendments to WIS. STAT. §§ 301.32(1) and 973.20(11)(c), which pertain to restitution and were enacted as part of 2015 Wis. Act 355, did not retroactively apply to Ortiz. *State ex rel. Ortiz v. Carr*, 2022 WI App 16, ¶¶13-14, 401 Wis. 2d 450, 973 N.W.2d 786. Accordingly, we relied on the pre-Act 355 version of those statutes when considering the relative authorities of the sentencing court and the Department in setting deduction percentages for purposes of restitution.

silent on the issue of gifted funds, *id.*, ¶63, and in the face of that silence, the Department retained its general statutory authority under WIS. STAT. § 301.32(1) to use money delivered to a prisoner's account for the prisoner's benefit, *id.*, ¶64. Our analysis of the gifted funds issue borrowed from our analysis of § 301.32(1) in a prior case, *State ex rel. Markovic v. Litscher*, 2018 WI App 44, 383 Wis. 2d 576, 916 N.W.2d 202. In *Markovic*, we interpreted the phrase "for … the benefit of the prisoner" to authorize the Department to deduct funds from an inmate's trust account to satisfy the inmate's restitution obligations. *Id.*, ¶38.

¶19 After we issued *Ortiz*, we asked the parties in this appeal to provide supplemental letter briefs clarifying their positions in light of the *Ortiz* decision. We discuss the parties' submissions in the analysis that follows.

## II

¶20 As mentioned, Bryson's JOC provides that the court-ordered surcharges and fees are "[t]o be collected by DOC from 25% of prison funds[.]" In this case, prior to our issuance of *Ortiz*, the Department argued (and the circuit court agreed) that Bryson's JOC did not purport to cap the Department's deduction rate at 25 percent. The Department argued that the percentage in the JOC represented a floor but not a ceiling and that the Department was free to deduct the 25 percent ordered in the JOC plus an additional 25 percent.

¶21 As shown in our discussion above, we rejected an argument to the same effect in *Ortiz*, 401 Wis. 2d 450, ¶¶25-28, and the Department acknowledges that its position on this issue is no longer viable based on that decision. We agree with the Department's concession and conclude that the unambiguous language of Bryson's JOC purports to limit the percentage at which the Department may deduct these funds to 25 percent of Bryson's prison funds.

## III

¶22    We now consider which entity—the Department or the sentencing court—has statutory authority to determine the percentage at which the Department may deduct funds from Bryson's inmate account to pay the surcharges and court fees at issue in this case. We begin with surcharges, and then turn to court fees. The differences between our analysis in *Ortiz* and in this case stem from differences in the statutes governing restitution (at issue in *Ortiz*) and those governing surcharges and fees (at issue in this case).

## A.  Surcharges

¶23    The Department's authority to set the deduction percentage for the surcharges at issue here is unambiguously established by statute. WISCONSIN STAT. § 165.755(6), which addresses the crime labs surcharge, and WIS. STAT. § 973.046(4), which addresses the DNA surcharge, both provide that the Department "shall assess and collect the amount owed" for these surcharges "from the inmate's wages or other moneys." When interpreting a statute, a court may consult dictionary definitions to ascertain the meaning of a term. *Ortiz*, 401 Wis. 2d 450, ¶34; *Otterstatter v. City of Watertown*, 2017 WI App 76, ¶ 24, 378 Wis. 2d 697, 904 N.W.2d 396. As the circuit court explained, one commonly understood meaning of the term "assess" is "to determine the rate or amount of (something, such as a tax, charge, or fine)." *Assess*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/assess (last visited June 16, 2022).

¶24    Based on their unambiguous language, we conclude that WIS. STAT. §§ 165.755(6) and 973.046(4) allow the Department to determine the deduction percentage for these surcharges. Bryson makes no argument to the contrary based

on any language in §§ 165.755(6) and 973.046(4). His argument is instead based on the language of WIS. STAT. § 973.05(4)(b), and we address that argument below.

¶25 Additionally, it is clear from the language of WIS. STAT. §§ 165.755(6) and 973.046(4) that, contrary to an argument Bryson made during the administrative proceeding, the Department's authority to collect funds to pay these surcharges is not limited to Bryson's prison wages. The statutes also provide that the assessments can be collected from the inmate's "other moneys," which unambiguously include gifted funds.

¶26 We now turn to the authority of a sentencing court to set deduction percentages for the surcharges.

¶27 The parties do not dispute that a sentencing court has authority to order a defendant to pay the crime labs and DNA surcharges, nor do they dispute that the surcharges can be included in the judgment of conviction. *See* WIS. STAT. §§ 814.76; 814.60(1). However, those statutes do not contain any language authorizing the sentencing court to set the deduction amount or percentage.

¶28 Bryson cites WIS. STAT. § 973.05(4)(b) as the alleged source of a sentencing court's authority to set the deduction percentage. That statute provides, in pertinent part:

> (4) If a defendant fails to pay the fine, surcharge, costs, or fees within [a specified time period following sentencing], the court may do any of the following:
>
> ….
>
> (b) Issue an order assigning not more than 25 percent of the defendant's commissions, earnings, salaries, wages, pension benefits, benefits under ch. 102, and other money due or to be due in the future to the clerk of circuit court for payment of the unpaid fine, surcharge, costs, or fees.

¶29     Bryson argues that the language in WIS. STAT. § 973.05(4)(b) provides the sentencing court with authority to determine the percentage at which the Department can deduct funds from inmate accounts, and further, that it caps these deductions at 25 percent.  We disagree.  Based on its unambiguous language, § 973.05(4)(b) controls what the sentencing court can order the clerk of court to assess from a defendant's wages and other money if the defendant fails to pay a surcharge within a specified time period following sentencing.  Nothing in the language of this statute imposes any limitation on the Department or suggests that a sentencing court's authority under this statute limits or overrides the authority of the Department, which is unambiguously expressed in WIS. STAT. §§ 165.755(6) and 973.046(4).

¶30     Bryson cites a footnote in an unpublished court of appeals opinion, *State v. Adams*, No. 2016AP1149, unpublished slip. op. (WI App May 31, 2017), but the analysis in that footnote is not persuasive.[9]  In *Adams*, unlike here, the sentencing court issued a post-sentencing "Income Assignment Order for Unpaid Fines and Other Financial Penalties" pursuant to WIS. STAT. § 973.05(4)(b).  *Id.*, ¶2.  Adams argued that the sentencing court entered this order in error because it had not held a hearing on his ability to pay the fines and penalties.  The court of appeals disagreed, stating:  "Not only did Adams fail to present any evidence of his inability to pay … at the motion hearing, but the issue is also irrelevant as there is a statutory cap in place" under § 973.05(4)(b) "prohibiting more than twenty-five percent of Adams' earnings in prison from being garnished."  *Id.*, ¶4 n.4.  While at face value, the language in this footnote does appear to support Bryson's argument,

_____

[9] *Adams* is an unpublished one-judge opinion.  Although it has no precedential value, it can be cited under WIS. STAT. RULE 809.23(3) for its persuasive value.  Bryson also cites an unpublished per curiam opinion that is not citable under Wisconsin rules of appellate procedure, *see* RULE 809.23(3), and we do not consider or discuss that opinion.

we are not persuaded that the ***Adams*** court correctly interpreted the meaning of § 973.05(4)(b). The court did not conduct any analysis of the pertinent statutory language, much less any analysis of whether that language allows a sentencing court to override the Department's unambiguous statutory authority with regard to the crime labs and DNA surcharges.

¶31 Bryson also points to "thirty plus years" of prior history, during which the Department deducted 25 percent for surcharges, consistent with language that Bryson asserts is common in judgments of conviction. He queries, "Where else [besides WIS. STAT. § 973.05(4)(b)] did the Department get the idea to take 25 percent for deductions?" We assume without deciding that, in earlier years, the Department based its deduction rate on the percentage that is set forth in § 973.05(4)(b), and we further assume that this percentage rate is common in judgments of conviction. But even with those assumptions, that does not mean that § 973.05(4)(b) actually limits the Department's authority to, by rule or policy, increase the percentage deduction rate consistent with its authority under WIS. STAT. §§ 165.755(6) and 973.046(4).[10]

## B. Court Fees

¶32 We now consider the Department's authority to set the deduction percentage for court fees. In contrast to the statutory language governing the Department's authority over surcharges, there is no single statute that unambiguously provides authority for the Department to determine the deduction percentage for court fees.

---

[10] As discussed above, we do not address whether the policy is valid and consistent with the Administrative Procedure Act. We deny Bryson's request, set forth in his reply brief, to remand to the circuit court so that Bryson can properly raise this or other arguments.

¶33    During the circuit court proceeding and in its initial respondent's brief to this court, the Department relied on its general authority over inmate trust accounts and prison wages as set forth in WIS. STAT. §§ 301.01, 301.32(1), and 303.01(8)(b).  However, in the supplemental letter brief it submitted to this court after *Ortiz* was issued, the Department asserts that *Ortiz* "appears to foreclose these arguments."  That is, the Department contends that *Ortiz* "likely does not support [the Department's] argument that [it] has exclusive authority [under §§ 301.01, 301.32(1), and 303.01(8)(b)] to set the deduction rate at 50% for the collection of court-ordered costs and assessments."  We take these statements as a concession that the Department acted contrary to law when it increased to 50 percent the deduction rate of inmate funds to pay Bryson's court fees, and we assume without deciding that the Department's concession on this point is correct.

## IV

¶34    To summarize our primary conclusions to this point, the Department has the statutory authority to determine the percentage deduction rate from Bryson's prison wages and gifted funds for the payment of the crime labs and DNA surcharges.  The sentencing court did not have authority to enter a JOC that purports to limit the Department from exercising that statutory authority, but that the language of Bryson's JOC purports to do just that.  Thus, we are left with the issue that the circuit court saved for another day—that is, whether the Department "must seek [from the sentencing court] corrective relief from a JOC that purports to limit [the Department's] rate-setting ability to no more than 25 percent or to otherwise exercise authority that a sentencing court does not have."

¶35    The Department addresses this issue in its supplemental letter brief to this court.  It does not argue that this portion of Bryson's JOC is void, or that it is

14

otherwise not binding on the Department. Instead, the Department cites **Ortiz** for the proposition that the language in Bryson's JOC appears to control "unless and until it is amended" by the sentencing court. The Department takes the following position:

> The result, then, with regard to surcharges, is that Bryson's JOC improperly intrudes into the Department's exclusive statutory authority to deduct Bryson's funds. However, to resolve the conflict, **Ortiz** appears to hold that the sentencing court's JOC controls unless and until it is amended. *See* **Ortiz**, [401 Wis. 2d 450,] ¶56 ("the Department does not have the authority to set a percentage that conflicts with an order from the sentencing court"). Thus, [the Department] would be forced to return to the sentencing court to challenge the JOC's 25% deduction rate as applied to surcharges.

¶36 We assume without deciding that the Department's position on this issue is correct and we accept it as a concession. Based on the Department's concession, we conclude that the Department acted contrary to law when it started deducting 50 percent of Bryson's funds to pay the crime labs and DNA surcharges, and that it should not have increased the percentage of these deductions unless or until the sentencing court amends Bryson's JOC.

## CONCLUSION

¶37 For all of these reasons, we reverse the order of the circuit court in part. We remand this matter to the circuit court with directions to enter an order consistent with this opinion that requires the Department to deduct 25 percent of Bryson's prison funds for the payment of the court-ordered surcharges and fees, consistent with Bryson's JOC, unless and until the JOC is amended by the sentencing court.

15

*By the Court.*—Order reversed in part and cause remanded with directions.