STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas Hale BUSH, Defendant-Appellant.

Court of Appeals

*No. 93–2495. Submitted on briefs April 25, 1994.—Decided June 1, 1994.*

(Also reported in 519 N.W.2d 645.)

716

717

For the defendant-appellant the cause was submitted on the brief of *Harry R. Hertel* of *Hertel, White, Johnson & Schilling, S.C.* of Eau Claire.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *Michael R. Klos*, assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Thomas Hale Bush appeals a postconviction order denying his motions to strike and order a new presentence investigation report (PSI) and to correct the trial court's sentence calculations under the attempt statute, § 939.32(1), STATS. Bush contends the trial court erroneously concluded that it lacked authority to modify the PSI after sentencing proceedings and hearings on subsequent motions to modify the sentence based on PSI inaccuracies were concluded. Bush argues that because PSIs are prepared pursuant to court orders, trial courts retain authority to correct inaccuracies that are later identified. Bush also contends that the trial court misapplied § 939.32(1) resulting in an erroneous calculation of the possible maximum sentence. Bush argues that § 939.32(1), which limits the maximum sentence to one-half the maximum penalty imposed if the crime were completed, should have been applied after the completed-crime sentence is enhanced under § 939.62. We conclude that policy principles and judicial administration dictate that courts should not exercise their jurisdiction to grant the relief Bush requests. We also conclude that the trial court correctly applied § 939.32(1) when

719

calculating Bush's sentence. We therefore affirm the order.

In May 1988, Bush was convicted of attempted second-degree sexual assault as a repeater. The trial court ordered the preparation of a PSI. The PSI, based in part on an FBI record, included as part of Bush's criminal history nine adult incarcerations, allegations of escape and references to unsuccessful efforts at sex offender treatment. At the sentencing hearing, the trial court imposed the maximum sentence of eleven years in prison even though it stated that it viewed the PSI "with some skepticism" based on its perceptions that the agent who prepared the PSI was not objective and appeared not to have adequately considered alternatives to incarceration.

In January 1989, Bush moved the trial court to modify his sentence, based in part on his allegation that the PSI contained inaccurate information concerning Bush's prior participation in sex offender treatment programs and that a program was available to treat Bush. After the hearing, Bush informed the court that the program would not accept him. While acknowledging that the PSI contained inaccurate information concerning Bush's prior inpatient treatment, the trial court refused to modify his sentence based on its determination that Bush was not amenable to treatment.

In October 1991, after our supreme court decided *State v. Skaff*, 152 Wis. 2d 48, 447 N.W.2d 84 (Ct. App. 1989), which guaranteed defendants the right to review their PSIs, Bush again moved the trial court to modify his sentence based in part on alleged inaccuracies in his PSI and that new treatment available to Bush and for which Bush was suitable was a new factor. Bush claimed that the PSI contained inaccurate information concerning Bush's prior participation in

sex offender treatment programs. The trial court granted the motion, stating that it had imposed its original sentence based on the PSI assertion that Bush was not treatable and that five prior attempts at treatment had been unsuccessful. The court noted that Bush had been treated only once in a program that was in its early developmental stages and was based on a medical model that had not proven to be successful in treating sex offenders. The trial court modified Bush's sentence by staying the eleven-year prison sentence and placing him on probation for eleven years. Bush did not request the trial court to modify his PSI at this time, and the trial court did not do so.

Bush's probation was subsequently revoked because he had consumed wine in violation of his probation conditions. In March 1993, Bush moved the trial court to strike the PSI and order a new PSI, based on his allegations that the PSI contained factual inaccuracies. At the motion hearing, Bush's counsel advised the trial court that the prison system provides no mechanism for correcting the PSI. Bush also offered several exhibits demonstrating that he had only seven felony convictions and not nine, as stated in the PSI, and that there were no documented escape attempts. Bush also offered exhibits demonstrating the adverse effects of these inaccuracies on his parole and program reviews in the prison. At the hearing Bush also requested the trial court to correct its sentence calculation.

The trial court denied Bush's motion to strike the PSI. The trial court noted that Bush could have raised the inaccuracies at sentencing and at his two prior motions to modify his sentence. The court also expressed concern about the flood of litigation that could result from allowing repeated requests for PSI

corrections. Finally, the trial court concluded that it lacked authority to grant the motion.

The trial court also denied Bush's motion to correct his sentence. The court concluded that § 939.32(1), STATS., plainly provides that sentences for attempted crimes are limited to one-half the maximum sentence for the completed crime. Because the completed crime does not involve Bush's status as a repeater, the court reasoned, Bush's maximum sentence was correctly calculated as one-half the maximum sentence for second-degree sexual assault (five years) plus the maximum allowable repeater enhancement (six years), amounting to eleven years total.

## MOTION TO STRIKE/CORRECT PSI

Bush contends that the trial court erred by denying his motion to strike the PSI and refusing to order a new PSI containing the correct information. It is important to note the procedural posture of this case. This case is an appeal of an order denying a motion; it is not a due process appeal of a Department of Corrections decision. Thus, our review of this issue is limited to determining whether the trial court correctly refused to grant the relief Bush requested.

We note that neither statutes nor court rules expressly grant trial courts the authority to grant the relief Bush requested. Bush suggests that the trial court has inherent authority to do so. We need not address this issue, however, because the trial court correctly identified sufficient reasons to not accept jurisdiction even if it had the power to do so.

"[A] court having jurisdiction can decline to exercise it if there are sufficient policy reasons to do so."

*Jones v. Jones*, 54 Wis. 2d 41, 46, 194 N.W.2d 627, 630 (1972). Here, the trial court expressed the public policy reason that allowing these types of claims would result in a flood of litigation seeking corrections of PSIs. Allowing defendants to repeatedly seek corrections of their PSIs for reasons unrelated to sentence modification would result in a flood of litigation in the trial courts.

Bush argues that this principle does not apply to him because his sentencing proceedings were concluded prior to the *Skaff* decision and because he never reviewed his PSI until the errors were brought to light in the prison system well after the modification hearings. Bush, however, had the opportunity to review his PSI at the second sentence modification hearing based on inaccuracies in his PSI, which occurred after *Skaff*. We therefore are not addressing the situation where the defendant has never had the opportunity to review his or her PSI.

■ Another policy reason supporting the trial court's decision to decline to exercise jurisdiction in this case is that Bush requested the trial court to correct his PSI for reasons related to the Department of Corrections' administration of its own rules. Bush essentially requested the court to tell the Department of Corrections how it is to use its records and how it is to correct errors in those records. Courts are not well-situated to make judgments on the Department of Corrections' use of its own records and administration of its own rules. While the trial court could appropriately modify Bush's sentence based on erroneous information in the PSI, because the PSI is now under the Department of Corrections' control, a motion to correct the information contained in the PSI should be directed to that agency.

This conclusion is not only consistent with the statutory authority granted to the trial court, but also with sound public policy. We conclude that policy principles and considerations of judicial administration dictate that courts should not exercise their jurisdiction to correct PSIs for reasons solely related to the Department of Corrections administration.[1]

Indeed, the nature of Bush's claims points him to the correct forum in which to seek his requested relief, which begins with the inmate complaint review system. We recognize that Bush's complaint, in which he requested a correction of his PSI, was denied by the warden. This refusal to correct the PSI is a final agency determination. *State ex rel. Braun v. Krenke*, 146 Wis. 2d 31, 39, 429 N.W.2d 114, 118-119 (Ct. App. 1988). Bush had the opportunity to appeal that denial to the trial court under a writ of certiorari. *See id.* at 39, 429 N.W.2d at 118.

## PROPER CALCULATION OF MAXIMUM SENTENCE

Bush contends that the trial court misapplied § 939.32(1), STATS., the attempt statute, resulting in an erroneous calculation of the possible maximum sentence. Bush argues that § 939.32(1) should have been applied after the completed-crime sentence is enhanced under § 939.62. Under Bush's interpretation, his maximum sentence would be one-half the maximum sentence for second-degree sexual assault as enhanced under § 939.62, or eight years.

---

[1] We note that the trial court could have appropriately ordered the inaccuracies stricken from the PSI at the sentence modification hearings.

This issue involves statutory interpretation and application, a question of law that we review independently of the trial court's determinations. *State v. Pham*, 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987). The purpose of the rules of statutory construction is to give effect to the legislative intent. *Id.* at 34, 403 N.W.2d at 36. When determining legislative intent, we first examine the language of the statute. *Id.*

Section 939.32(1), STATS., provides in part, "Whoever attempts to commit a felony . . . may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime . . . ." Bush asserts that § 939.32 is ambiguous when applied in a repeater context because it does not clearly state whether enhancers should be figured into the maximum sentence before or after the halving provision applies. We do not agree.

The plain language of § 939.32(1), STATS., provides that the maximum penalty for the completed crime is halved. Wisconsin courts do not view repeater status, under § 939.62, as part of the underlying crime for which the defendant was convicted. Repeater status functions only to enhance the penalty for crimes committed by a repeat offender; "[i]t does not give rise to a separate crime upon which a defendant may be separately sentenced." *State v. Upchurch*, 101 Wis. 2d 329, 332 n.2, 305 N.W.2d 57, 59 n.2 (1981). "A charge of being a repeater is not a charge of a crime and, if proved, only renders the defendant eligible for an increase in penalty for the crime of which he is convicted." *State v. Farr*, 119 Wis. 2d 651, 661, 350 N.W.2d 640, 646 (1984). Additionally, the plain language of § 939.32(1) does not provide that any applicable

repeater enhancement should be reduced. Thus, under § 939.32(1), the maximum penalty for the underlying crime is halved, and then that penalty may be enhanced under § 939.62.

Here, Bush was convicted of attempted second-degree sexual assault. The maximum sentence for the completed crime, second-degree sexual assault, is ten years. Section 939.50(3)(c), STATS. One-half of the maximum penalty is five years in prison. Under § 939.62(1)(b), STATS., Bush's sentence may be increased up to six years because of his repeater status. Thus, Bush's maximum sentence was eleven years. We conclude that the trial court properly denied Bush's motion to correct his sentence.

Bush argues that this interpretation would, in certain circumstances, render the attempt statute meaningless. As an example, Bush notes that the penalty for attempted battery would be four-and-one-half months. A defendant convicted of attempted battery as a repeater, under our analysis, would be exposed to a maximum penalty of three years. Because of the wording of § 939.62(1)(a), STATS., a defendant convicted of a completed battery as a repeater would also be exposed to a maximum penalty of three years. Thus, Bush argues, under this circumstance the halving effect would not result in a lesser sentence for a defendant convicted of an attempt.

We rejected a similar argument in *State v. McKenzie*, 151 Wis. 2d 775, 446 N.W.2d 77 (Ct. App. 1989). In *McKenzie*, the defendant argued that the repeater statute was unconstitutional because it exposes a Class C misdemeanor repeater to the same penalty as a Class A misdemeanor repeater. We noted that the focus of the repeater statute is to increase the punishment for

repeat offenders; thus, the Class of the misdemeanor the habitual criminal committed is irrelevant. *Id.* at 780, 446 N.W.2d at 79. "The crime itself is not as important as the fact that it is but one in a series of crimes the offender has committed." *Id.* at 780-81, 446 N.W.2d at 79. Thus, the fact that the repeater enhancement may negate the halving effect in § 939.32, STATS., does not render § 939.32 meaningless.

*By the Court.*—Order affirmed.