State of Wisconsin ex rel. John J. Castellano, Petitioner-Appellant,
v.
Gary R. McCaughtry, Respondent-Respondent.
No. 04-0777.
Court of Appeals of Wisconsin.
Opinion Filed: September 23, 2004.
Before Deininger, P.J., Vergeront and Higginbotham, JJ.
¶1 PER CURIAM.
John Castellano appeals an order dismissing his certiorari action and quashing a previously issued writ. We affirm.

BACKGROUND
¶2 In 1994, Castellano was convicted in related cases of two counts of second-degree sexual assault of a child, three counts of sexual exploitation of a child, and one count of possession of child pornography. All six counts related to his sister-in-law, who was fourteen years old at the time, while Castellano was in his forties. In 2000, after the original judgments of conviction were voided, Castellano was resentenced on one count of second-degree sexual assault and the three counts of sexual exploitation of a child.
¶3 Christopher Kittmann, an agent of the Department of Probation and Parole, prepared a presentence investigation report (PSI) for the resentencing hearing in 2000. Kittmann's PSI incorporated a prior PSI which had been prepared by Michael Gollinger in 1994. Gollinger's PSI noted that the victim's mother had told Gollinger during an interview that Castellano began dating the victim's sister when she was eleven years old, ran away with her when she was thirteen, impregnated her by the time she was fifteen, and married her when she was sixteen.
¶4 Castellano asserts that a series of Department of Corrections (DOC) psychologists and social workers in the Psychological Services Unit (PSU) have relied upon the allegations in the PSI regarding his wife, and possibly also on the ultimately dismissed child pornography charge, for the proposition that he had "multiple victims." As a result of those assessments, Castellano claims that he has been wrongly classified as having a medium to high risk of reoffending, denied transfer to a medium security facility, prejudiced with regard to parole determinations, and denied visitation rights with his niece, nephew and granddaughters.
¶5 In 2003, after unsuccessfully attempting to utilize the Inmate Complaint Review System (ICRS), Castellano petitioned the warden to "correct" his inmate records by removing all references to "multiple victims" from his PSU files. The warden denied the request, noting that the PSU had already addressed the matter by making additional notations in Castellano's file, presumably documenting Castellano's objections to the information contained therein.

DISCUSSION
¶6 We begin by clarifying the scope of our certiorari review. Castellano argues in his brief that the circuit court erred in refusing to strike the PSI from the record or to directly address his claims that the information contained in the PSI was inaccurate and that the PSI writers were biased against him. On certiorari, however, we consider only whether an administrative agency (1) stayed within its jurisdiction, (2) acted according to law, (3) acted arbitrarily, oppressively or unreasonably, and (4) based its decision on the evidence before it. State ex rel. Whiting v. Kolb, 158 Wis. 2d 226, 233, 461 N.W.2d 816 (Ct. App. 1990). The sentencing court's original acceptance of the PSI was not an act of an administrative agency subject to certiorari review, but rather part of Castellano's criminal case, which could have been addressed on a direct appeal from his sentences back in 2000. Therefore, the inclusion of the PSI in the court record was outside the scope of review for this certiorari action. The only matter properly before the circuit court, and now before this court, is the warden's refusal to correct or expunge information derived from the PSI from Castellano's PSU files.
¶7 The Department of Corrections has the authority to correct inaccurate information contained in a PSI for its own administrative use. See State v. Bush, 185 Wis. 2d 716, 519 N.W.2d 645 (Ct. App. 1994) (explaining why the circuit court lacks such authority). As custodian of an inmate's files, the prison warden or superintendent makes the final administrative decision on an inmate's request to correct information in the files. State ex rel. Braun v. Krenke, 146 Wis. 2d 31, 40, 429 N.W.2d 114 (Ct. App. 1988), superseded by statute on other grounds, State ex rel. Hensley v. Endicott, 2001 WI 105, 245 Wis. 2d 607, 629 N.W.2d 686. Castellano points to no authority, however, and we are aware of none, which specifies a particular manner in which the DOC must act to address an alleged inaccuracy. Nor, of course, is the DOC required to accept an inmate's characterization of a fact or its significance whenever there is a dispute.
¶8 Here, we are satisfied that the warden acted reasonably and according to law when he determined that additional notations in Castellano's PSU files, apparently documenting Castellano's objections to the accuracy of the "multiple victim" statements, resolved the matter. If the DOC continues to explicitly base decisions such as security classifications or parole determinations upon the theory that Castellano had multiple victims, Castellano remains free to challenge the accuracy of the information upon which such an individual decision is made. See, e.g., State ex rel. Adell v. Smith, 2001 WI App 168, ¶11, 247 Wis. 2d 260, 633 N.W.2d 231 (allowing inmate to challenge security classification on theory that his file contained erroneous information). However, since it does not appear that the warden actually decided the challenged information was accurate, we see no adverse determination on the merits of the accuracy claim to review at this time.
By the Court.  Order affirmed.