COURT OF APPEALS
DECISION
DATED AND FILED

February 8, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1884-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2014CF7

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JEFFREY G. MACMILLAN,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County:  GARY R. SHARPE, Judge.  *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jeffrey G. MacMillan appeals from a judgment of conviction for three counts of second-degree sexual assault of a child as well as an order denying postconviction relief.   MacMillan argues he is entitled to plea withdrawal because his second attorney was constitutionally ineffective when advising him about his case and because he felt pressured by his attorney's threat to withdraw.   He also argues he is entitled to sentence modification because the circuit court refused to seal his presentence investigation report (PSI) or strike the portions of it that he claims are inaccurate.   Finally, he argues the Department of Corrections (DOC) is unlawfully applying 50% of his inmate funds, including gifted monies, to his fines and costs, rather than 25% as ordered by the judgment of conviction.

¶2     We reject MacMillan's arguments.   First, we conclude he has not established a manifest injustice justifying plea withdrawal.   Second, we conclude that MacMillan has not established a new factor warranting sentence modification. Finally, the case law establishes that MacMillan's claim about the unlawful use of his inmate funds must be initially directed to the DOC, not the sentencing court. We affirm.

**BACKGROUND**

¶3     MacMillan was charged in an Amended Criminal Complaint with multiple counts, including five counts of first-degree and three counts of second-degree sexual assault of a child.   That child was thirteen-year-old Emily,[1]

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use a pseudonym when referring to the victim.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

MacMillan's adopted daughter and the biological daughter of his wife. Emily told police that MacMillan had been sexually assaulting her for months while her mother, a physician, was overseas in pursuit of employment. Emily told the police that MacMillan had video-recording equipment in the bedroom where the assaults took place and that he would photograph her nude. Police executed a search warrant on the premises and seized a laptop containing video recordings and images depicting the sexual assaults.

¶4    MacMillan's first attorney represented him through his arraignment. MacMillan then decided to retain his second trial counsel, who negotiated a plea agreement with the State. Under that agreement, MacMillan would plead no contest to the three second-degree sexual assault of a child charges, with the remaining counts (as well as those of a separate firearms case) dismissed and read in at sentencing. The State agreed to recommend a forty-year term of initial confinement at sentencing, with the defense free to argue. After a colloquy, the circuit court accepted MacMillan's pleas and ordered a PSI.

¶5    MacMillan's second attorney withdrew, and he obtained new counsel for the sentencing proceedings. Prior to the hearing, his third attorney filed a letter with the court containing approximately fifty challenges to information contained in the PSI. Most of the challenges were to statements by the victim or others, often disputing trivial aspects of their claims.[2] Some of the PSI assertions MacMillan challenged were, however, more consequential, including Emily's mother's assertion that MacMillan was responsible for giving

---

[2] For example, MacMillan contested Emily's claim that he would make her drink liquor shots out of a funnel, and he reported that his reference in a Valentine's Day card to staring at Emily's butt was an "inside joke."

Emily herpes—an assertion that MacMillan attempted to disprove with medical testing.

¶6 The circuit court addressed the disputes concerning the PSI at the inception of its sentencing remarks, commenting that the PSI was "one of the most unusual ones I have ever read" and that it "dealt with an inordinate amount of trivial facts[.]" The court acknowledged that MacMillan's sentencing letter was "extraordinarily helpful," and it stated that it was going to "disregard all of the statements that may be challenged by Mr. MacMillan because, quite frankly, they are really immaterial." The court stated these matters were "just a … side show" and did not concern the underlying conduct that precipitated the sexual assault charges as confirmed by the video recordings and images seized by police. On each count, the court sentenced MacMillan to thirteen years' initial confinement and eight years' extended supervision, to run consecutively for a total initial confinement period of thirty-nine years. The court also imposed a $10,000 fine on each count plus costs based on the "despicable" nature of the offenses.

¶7 MacMillan subsequently filed a postconviction motion. He sought plea withdrawal on the basis that his no-contest pleas were entered as a result of his second attorney's constitutionally ineffective assistance, namely: (1) counsel's erroneous advice that he had waived his right to confront the victim at trial by agreeing to a recorded deposition of the victim and her mother; and (2) his statement that there was "'no way'" MacMillan would receive a forty-year sentence. MacMillan also argued his pleas were precipitated by his second attorney's threat to withdraw in the face of accumulating arrears. MacMillan's motion further sought sentence modification based on the court's apparent refusal to seal the PSI or strike the portions of it MacMillan challenged as inaccurate. Finally, MacMillan sought to amend the judgment of conviction to reflect the

"correct" amount of the fines and to preclude the DOC from seizing 50% of his inmate funds, rather than the 25% ordered by the judgment.  Following a *Machner* hearing, the court denied his motion, though it did order that the defense sentencing letter be included as an attachment to the PSI.[3]  This appeal follows and largely concerns the same issues as the postconviction motion.

## DISCUSSION

### I.  Plea Withdrawal

¶8     First, we address MacMillan's *Nelson*-*Bentley* motion.[4]  To withdraw a plea after sentencing, the defendant must demonstrate by clear and convincing evidence that the plea was entered as a result of a "'manifest injustice[.]'" *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).  The "'manifest injustice'" standard is met by demonstrating that the plea was predicated upon ineffective assistance of counsel.  *Id.*  To demonstrate ineffective assistance of counsel in the plea context, the defendant must show by reference to objective facts that counsel's representation fell below the constitutional standard for effective assistance and that he or she would not have entered the plea but for counsel's deficient performance.  *Id.* at 312-13; *see also Strickland v. Washington*, 466 U.S. 668 (1984) (establishing two-prong test for ineffective assistance of counsel).

---

[3]  *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[4]  *See State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972).

### A. Erroneous Advice Regarding MacMillan's Confrontation Rights

¶9      MacMillan claims he received ineffective assistance of counsel relating to his pleas as a result of his attorney's erroneous advice regarding a stipulation entered into between his first trial counsel and the State. Emily and her mother were subject to a material witness bond as the mother had employment in New Zealand and intended to return there. In an effort to have that bond removed, their attorney proposed that they be allowed to testify in pretrial proceedings by video deposition and promised they would return in person for a trial if necessary. The State opposed the modification request, citing the necessity of their testimony for the State's case and MacMillan's constitutional confrontation rights.

¶10      After a short recess, the parties arrived at a resolution in which the State agreed to withdraw its objection in exchange for Emily and her mother appearing for pretrial videotaped depositions at the sheriff's department. Emily and the mother's counsel and MacMillan's attorney both specified that the depositions were not intended as a waiver of MacMillan's confrontation rights at trial.

¶11      MacMillan now argues that his plea was entered based upon his second trial counsel's representation that Emily's and her mother's deposition testimony was admissible at trial regardless of the stipulation. This assertion is in conflict with the facts as found by the circuit court.

¶12      The record does not establish generally—and certainly not to a degree sufficient to render the circuit court's factual findings clearly erroneous—that MacMillan's second trial counsel told him definitively that the family deposition testimony would be admissible. Trial counsel stated he may have advised MacMillan that the recorded statements were admissible shortly after he

6

took over the case before he was aware of the stipulation. However, trial counsel's testimony—buttressed by the testimony of MacMillan himself—established that at some point his second attorney became aware of the stipulation and discussed whether it could be enforced vis-à-vis MacMillan's confrontation rights. Counsel testified that he was concerned the State would seek to admit the deposition testimony despite the stipulation, though he considered such efforts unlikely to succeed. Although MacMillan believes the stipulation was ironclad, and therefore his second attorney's concern was unfounded, we cannot in hindsight conclude that trial counsel's theoretical discussion on the issue resulted in deficient performance in the context of advising MacMillan on whether to accept the State's offer.

¶13 In any event, MacMillan has failed to demonstrate any prejudice arising from his second attorney's musings. The admissibility of the deposition testimony was a relevant consideration only if—contrary to their promises during pretrial proceedings—Emily and her mother declined to return to the United States for trial. Their declining was by no means a certainty; indeed, counsel regarded the probability of their returning as essentially a coin flip. Moreover, we note that during the plea hearing the prosecutor explicitly addressed the issue of their return, noting that law enforcement had been in regular contact with Emily and her mother and had been repeatedly assured that they would appear for any trial.

¶14 Perhaps more importantly, MacMillan's second trial counsel, in testimony the circuit court found credible, stated that MacMillan had "bigger issues" than whether their testimony would be available: namely, the video recordings and photographs MacMillan made that depicted him sexually assaulting Emily. The prosecutor, too, opined at the plea hearing that even if Emily declined to return to the United States, the images MacMillan had created

of the sexual assaults would allow the State to prove its case. Based on his second counsel's testimony, the court reasonably concluded that it was the strength of the State's other evidence, not any discussion about the waiver of MacMillan's confrontation rights, that animated his decision to plead.

### B. Erroneous Advice Regarding the Expected Sentence

¶15    MacMillan next asserts that he was grossly misadvised about the length of his expected sentences by his second attorney, claiming that his attorney "effectively guaranteed MacMillan that there was 'no way' he'd receive a sentence anywhere close to the 40 years the State was recommending[.]" MacMillan faults the circuit court's findings, essentially arguing that the findings are inadequate because the court found it incredible that an experienced attorney would make the error of guaranteeing a particular sentence.

¶16    We perceive no error in the circuit court's reasoning on this issue. MacMillan's second attorney offered testimony regarding his general practices and specifically testified that he "made it very clear to [MacMillan] on multiple occasions that we don't know what the end result is going to be, you're taking a risk when you make a plea, the judge can do up to the maximums and make it consecutive on each[.]" The court's emphasis on trial counsel's experience and general practices was appropriate when determining whether to credit trial counsel's explanation, which was that he told MacMillan a lesser sentence was conditional and might occur if he expressed remorse, if they received a "good psychosexual evaluation," and if they commissioned a private PSI.

## C. *MacMillan's Second Trial Counsel's Withdrawal*

¶17     MacMillan contends his pleas were entered under duress as a result of his second trial counsel's threat to withdraw. The matter of second trial counsel's withdrawal was addressed at the plea hearing. The prosecutor noted that there had been some discussion immediately prior to the plea hearing of MacMillan's second attorney withdrawing, and the prosecutor wanted to put on the record that MacMillan was satisfied with his representation before the court accepted his pleas. The court specifically asked if MacMillan was "comfortable with the representation of [his second trial counsel], that you are not feeling that he is … about to leave you if you didn't get this case resolved today?" MacMillan replied that he did not feel that way.

¶18     MacMillan now asserts that, contrary to his statement at the plea hearing that he and his second trial counsel had resolved their differences, he in fact felt compelled to take the State's plea offer based upon second counsel's threat to withdraw. The circuit court found that MacMillan was aware his retainer agreement required a $25,000 payment in advance of trial, and it is undisputed that at the time of the withdrawal request MacMillan was approximately $6,800 in arrears.[5] His second trial counsel provided representation through the plea hearing, despite the arrearage, and testified he disliked withdrawing from cases and likely would have stayed on through sentencing had there not been a complete breakdown in communication.

---

[5] The contract MacMillan signed provided that counsel had the right to seek withdrawal any time the arrearage exceeded $500.

¶19    The circuit court found that MacMillan had some funds available but made the choice to pay his divorce attorney rather than negotiate to keep his second trial counsel on. The court noted that there was no trial date looming at the time of the pleas, and MacMillan's indigency would have qualified him for successor counsel through the State Public Defender (which eventually occurred). It further found that MacMillan was seeking to delay the plea hearing to see if he could get a better deal from the State. Under the circumstances, the court concluded MacMillan's claim that he resolved the case under the duress of his second attorney's threat to withdraw was untenable. We agree with the circuit court that under the circumstances, MacMillan has failed to demonstrate that his pleas were entered under the duress of any coercive conduct on the part of his attorney. *See **State v. Basley***, 2006 WI App 253, ¶9, 298 Wis. 2d 232, 726 N.W.2d 671.

## II. *Sentence Modification Based On Inaccuracies in the PSI*

¶20    MacMillan next argues the sentencing court erred because it overlooked his request to either strike portions of or seal the PSI. MacMillan contends that the allegedly inaccurate information contained in the PSI is now negatively affecting his incarceration, for example, by being referenced in his inmate classification report. He asserts the DOC's use of the PSI information he challenged at sentencing constitutes a new factor warranting sentence modification.

¶21    As the State points out, MacMillan fails to make a typical sentence modification argument, which would require that MacMillan demonstrate the existence of a new factor that justifies altering the sentence. *See **State v. Harbor***, 2011 WI 28, ¶38, 333 Wis. 2d 53, 797 N.W.2d 828. A "'new factor'" is a fact that

is "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Id.*, ¶40. Whether the defendant has established a new factor is a question of law. *Id.*, ¶36.

¶22 We reject MacMillan's sentence modification arguments and conclude the alleged inaccuracies he complains of do not constitute new factors. The alleged inaccuracies were known to the sentencing court, which explicitly addressed the unusual nature of the PSI and the defense memo challenging many of the assertions made therein. Moreover, the court disclaimed any reliance on the challenged portions of the PSI, finding them immaterial.

¶23 MacMillan nonetheless claims that it was within the circuit court's authority to order the PSI amended or sealed as part of the sentence modification proceedings, citing *State v. Melton*, 2013 WI 65, ¶74, 349 Wis. 2d 48, 834 N.W.2d 345, and *State v. Bush*, 185 Wis. 2d 716, 519 N.W.2d 645 (Ct. App. 1994). Collectively, those cases stand for the proposition that courts should refrain from correcting PSIs when the matters complained of solely relate to the DOC's administration of a particular defendant's sentence. At the end of the day, that is all MacMillan complains of here.[6]

---

[6] For example, MacMillan contends that inaccurate information in the PSI has been used to justify his maximum-security placement, and he is ineligible for sex offender treatment until he qualifies for a medium-security placement. While it is laudable that MacMillan wishes to commence treatment, he has not shown that his receipt of immediate treatment in the prison system was a fact highly relevant to his sentence so as to justify relief.

To the extent MacMillan contends the alleged PSI errors will inhibit his eventual treatment because he will be required to admit the false allegations, despite the defense supplement to the PSI, this argument is purely speculative at this point.

11

¶24   Even if the circuit court had the authority to order the PSI sealed or to order the alleged inaccuracies stricken, MacMillan has failed to demonstrate that the court erred in its approach to the issue.  There always exists a possibility that the PSI contains incomplete or inaccurate information, and a defendant may challenge a PSI he or she believes suffers from those defects.  *See Melton*, 349 Wis. 2d 48, ¶29.  That process was accomplished here, both at sentencing, when the court explicitly refused to consider allegations outside the scope of the criminal charges, and afterwards, when the circuit court ordered that the PSI be supplemented by the defense materials.

¶25   MacMillan's postconviction challenge to the victim's offense description and other portions of the PSI consumed a not inconsequential amount of the circuit court's time, essentially becoming its own credibility contest.[7]  The court reasonably concluded that it did not want to be in a position to resolve fifty different factual challenges to the witness statements about events that may or may not have occurred, many of which concerned trivial issues.  Its solution—ordering the defense memo outlining MacMillan's disagreements—was also reasonable and an appropriate act of discretion.  We do not perceive the law to have required more.  *See id.*, ¶57 (cautioning against judicial incursions into a separate branch of government that "would not threaten or impair the operation of the judiciary").

---

[7] One reason our case law is circumspect regarding court review of a PSI based solely on DOC administration is the anticipated "flood of litigation" seeking corrections to PSIs if such proceedings were regularly entertained.  *State v. Bush*, 185 Wis. 2d 716, 723, 519 N.W.2d 645 (Ct. App. 1994).

*III. Inmate Funds*

¶26    MacMillan next challenges the DOC's seizure of 50% of his inmate funds, including gifted monies, based on administrative rules passed in 2015.[8]  He acknowledges the holding of ***State v. Williams***, 2018 WI App 20, ¶4, 380 Wis. 2d 440, 909 N.W.2d 117, that the "circuit court, acting as the sentencing court, lacks the competency to address an allegedly improper disbursement of funds by the DOC."  His Reply brief contends he avoids this proscription because he is also seeking to amend the judgment of conviction to conform to the dictates of certain statutory language, which he apparently believes the new administrative rules flout.

¶27    This artful rephrasing of the relief he seeks does nothing to recast the fundamental basis for his claim: he believes the DOC is unlawfully directing funds from his inmate account.  ***Williams*** is clear that such a claim cannot be considered by the sentencing court.  As set forth in ***Williams***, MacMillan is under the control of the executive branch, and his recourse is through the inmate complaint review system and, if necessary, by writ of certiorari to the circuit court.  *See **id.***, ¶4.

¶28    The supplemental authorities MacMillan has provided do nothing to change this fundamental principle.  In both cases, the inmate obtained relief through certiorari review.  *See **State ex rel. Ortiz v. Carr***, 2022 WI App 16, ¶10, 401 Wis. 2d 450, 973 N.W.2d 786; ***State ex rel. Bryson v. Carr***, 2022 WI App 34, ¶7, 404 Wis. 2d 307, 978 N.W.2d 595.

---

[8]  Though MacMillan initially challenged the calculation of the amount of the fines on his judgment of conviction, his Reply brief withdraws that argument.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.